Rubin KREMER, Plaintiff,

v.

CHEMICAL CONSTRUCTION CORP., Defendant.

No. 78 Civ. 3182.

United States District Court, S. D. New York.

Dec. 7, 1978.

Rubin Kremer, pro se.

Donald M. Crook, Layton & Sherman, New York City, for defendant.

## OPINION AND ORDER

PIERCE, District Judge.

The plaintiff, Rubin Kremer, instituted this *pro se* action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The plaintiff alleges that the defendant, Chemical Construction Corp. ("Chemico"), both discharged him and failed to rehire him because of his religion and national origin. The defendant has moved for dismissal under Fed.R.Civ.P. 12(b) or, alternatively, for summary judgment under Rule 56 on the ground of res judicata. For the reasons that follow, the Court finds that the plaintiff is entitled to a *de novo* hearing on the claims presented to the Court as provided for in 42 U.S.C. § 2000e–5 and therefore denies defendant's motion.

## FACTS

The plaintiff, a former employee of Chemico, alleges that he was terminated by the defendant on August 1, 1975 because of his national origin and his adherence to the Jewish religion. He also alleges that Chemico refused to rehire him later because of his national origin and religion. These alleged discriminatory acts are prohibited by both federal and state laws. 42 U.S.C. § 2000e–2(a)(1) (1970); N.Y.Exec.Law § 296(1) (McKinney Supp.1977).[1]

---

**1.** 42 U.S.C. § 2000e–2(a) provides:

"It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin; . . . ."

N.Y.Exec.Law § 296(1) provides:

"It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual . . . ."

The plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on May 6, 1976, within the filing period. The EEOC referred the matter to the New York State Division of Human Rights ("HRD") as mandated in 42 U.S.C. § 2000e–5(c).[2] HRD is the state agency charged with the enforcement of state law prohibiting employment discrimination. That agency reviewed the complaint which alleged age as well as religious discrimination. New York's statute expressly prohibits age discrimination whereas Title VII does not. *Compare* 42 U.S.C. § 2000e–2(a)(1) *with* N.Y.Exec.Law § 296(1) (McKinney Supp.1977).

On March 4, 1977 while the matter was still pending before HRD, the plaintiff again requested EEOC to investigate his claim because of the state's delay in resolving his claims. HRD subsequently reached a determination on April 28, 1977 that the plaintiff's claims were meritless. Its determination was based on the findings that the plaintiff was not rehired because one employee who was rehired had greater seniority than the plaintiff, that another employee who was rehired filled a lesser position than that previously held by the plaintiff, and that the plaintiff's creed and age were not factors considered in Chemico's selection. HRD did not, however, make an express finding that his creed and age were not factors considered by Chemico in its decision to discharge him. On administrative appeal, HRD's determination was affirmed on November 25, 1977 by the State Human Rights Appeals Board on the grounds that HRD's findings were not arbitrary or capricious.

The plaintiff then appealed the decision to the New York State Supreme Court, Appellate Division, First Department, under N.Y. Exec. Law §§ 296–298. That intermediate appellate court affirmed the decision on February 27, 1978. The matter was not appealed further.

On May 11, 1978, the EEOC reviewed the HRD's findings, the complaint, and the record and determined that there was no reasonable cause to believe that the plaintiff's claims were valid. It then issued a notice of right to sue. Plaintiff subsequently instituted this action *pro se,* and requested a *de novo* trial under Title VII.

## DISCUSSION

The issue presented to the Court by the instant motion to dismiss the complaint or, in the alternative, for summary judgment is whether the prior state appellate court review of the state agency's action under state law bars a federal action under Title VII.

Chemico urges this Court to adopt the approach followed in *Mitchell v. National Broadcasting* Co., 553 F.2d 265 (2d Cir. 1977) and dispose of this motion similarly. In *Mitchell,* the plaintiff had instituted an action under 42 U.S.C. § 1981, but prior to

---

**2.** 42 U.S.C. § 2000e–5(c)

"In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings ·have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided . . . .."

*Also see* 29 C.F.R. 1601.12(b)(1)(iii–iv) (1977)

"The aggrieved party and any person filing a charge on behalf of an aggrieved party shall be notified, in writing, that the document which he or she sent to the Commission has been forwarded to the State or local agency . . . and that unless the Commission is notified to the contrary, on the termination of State or local proceedings, or after 60 . . days have passed, whichever occurs first, the Commission will consider the charge to be filed with the Commission and commence processing the case . . . . .

"Upon notification of the termination of State or local proceedings or the expiration of 60 (or 120) days, whichever occurs first, the Commission will consider the charge to be filed with the Commission and will commence processing the case."

instituting the federal action, the plaintiff had brought an action under the N.Y. Human Rights Law with HRD. Only after she was denied relief and after instituting an appeal from HRD's decision with the Appeals Board did that plaintiff seek federal relief by filing a charge of discrimination with the EEOC. The EEOC issued a finding of no probable cause after HRD's determination was affirmed by the Appeals Board and the Appellate Division.

The plaintiff then instituted an action under § 1981 in federal court, but the action was dismissed on the ground of res judicata. On appeal, the Court of Appeals held that the federal action was indeed barred by res judicata because the plaintiff had sought state court review of the state agency determination. *Id.* at 276. However, it expressly reserved judgment on the question of whether the principle of res judicata would bar a similar action under Title VII. *Id.* at 275 n.13.

In comparison, the plaintiff in this action initially filed a complaint with the EEOC, was referred to HRD, and resumed his request that the EEOC investigate his charges prior to HRD reaching its conclusion. Like the complainant in *Mitchell,* the plaintiff commenced this action in federal court after failing in his appeal to the state Appellate Division regarding the Appeals Board's affirmance of the HRD determination.

The similarity of the facts of the instant action to those in *Mitchell,* Chemico contends, is sufficient to justify a ruling similar to that in *Mitchell,* particularly since Title VII does not require exhaustion of state judicial remedies prior to instituting federal claims and since the plaintiff chose not to appeal the Appellate Division's affirmance to the New York State Court of Appeals. While Title VII does require that the EEOC defer complaints to HRD, 42 U.S.C. § 2000e–5(c) (1970), it does not require that complainants exhaust state judi-

cial remedies before seeking federal relief. On the contrary, Title VII allows the filing of a complaint with the EEOC 60 days after proceedings are initiated under state law. *Id.* Chemico contends that if the plaintiff had sought federal relief immediately after the rulings from the HRD and from the State Appeals Board rather than appealing to the state court, his right to a *de novo* federal trial would have been preserved. See *Voutsis v. Union Carbide Corp.,* 452 F.2d 889 (2d Cir.), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1768, 32 L.Ed.2d 117 (1971); *Batiste v. Furnco Construction Corp.,* 503 F.2d 447 (7th Cir.), *cert. denied,* 420 U.S. 928, 95 S.Ct. 1127, 43 L.Ed.2d 399 (1975).

In determining that state court review barred a subsequent federal court action under § 1981, the Court in *Mitchell* stressed that § 296 of the New York Executive Law is at least as broad as the federal constitution and civil rights laws in prohibiting discrimination in employment, 553 F.2d at 269–70, that the issues addressed in the state proceedings were the same as those before the district court, *id.* at 270, that the standard for evaluating the plaintiff's claims under state law is comparable to that for evaluating a summary judgment motion in the federal courts, *id.* at 271, and that the New York state courts are not less capable than federal courts in resolving the legal sufficiency of a complaint or less sensitive to claims under the State Human Rights Law which may also be actionable under federal statute. *Id.* at 276. The issue to be determined here is whether these considerations compel a finding of a similar bar of actions brought under Title VII.[3]

█ The principles of collateral estoppel and res judicata are made applicable to federal courts with respect to prior state court judgments by 28 U.S.C. § 1738. That statute obligates the federal courts to give full faith and credit to judgments of state

---

**3.** A review of decisions of sister courts in other circuits has revealed sharply conflicting opinions. *Compare Beck v. Mather,* 417 F.Supp. 648 (W.D.Va.1976) (prior state court dismissal not res judicata) with *Bennun v. Board of Governors,* 413 F.Supp. 1274 (D.N.J.1976) (prior state court determination is res judicata).

courts of competent jurisdiction.[4] The federal court, however, need only give that state judgment the same effect as it would be given in the state in which it was rendered. *Mitchell v. National Broadcasting Co.,* 553 F.2d at 274.[5] Ordinarily, this requires an analysis of the res judicata effect of the state court proceedings within the state and an examination of the local law of res judicata and collateral estoppel. *Winters v. Lavine,* 574 F.2d at 52 (2d Cir. 1978).

■ While section 1738 mandates an analysis and application of the state doctrines of res judicata and collateral estoppel, other considerations must also be evaluated. As the *Mitchell* court noted, even if a state court's determination had a res judicata or collateral estoppel effect on other courts of that state, federal courts are not always bound by such prior state decisions. " 'Other well-defined federal policies, statutory or constitutional, may compete with those policies underlying [28 U.S.C. §] 1738 [which provides that the federal courts give full faith and credit to judgments of state courts of competent jurisdiction].' " *Id.* at 274 (citing *American Mannex Corp. v. Rozands,* 462 F.2d 688, 690 (5th Cir.), *cert. denied,* 409 U.S. 1040, 93 S.Ct. 524, 34 L.Ed.2d 489 (1972)). Especially in civil rights actions, the res judicata and collateral estoppel requirements of § 1738 have not been rigidly applied. *See Mitchell, supra* at 274; *McCune v. Frank,* 521 F.2d 1152, 1156 n.10 (2d Cir. 1975); *also see* discussion in *Winters, supra* at 56. But the mere fact that a federal civil rights action is involved is not sufficient reason to deny a state court determination the full faith and credit required by § 1738. *Mitchell v. National Broadcasting Co., supra.*

Recent decisions in this circuit have supported the conclusion that state court deter-minations have res judicata or collateral estoppel effect on subsequent federal civil rights actions. *Winters v. Lavine, supra; Mitchell v. National Broadcasting Co., supra. Winters* was an action under 42 U.S.C. § 1983 (*accord Hammer v. Town of Greenburgh,* 440 F.Supp. 27 (S.D.N.Y.1977)) and *Mitchell* was instituted under 42 U.S.C. § 1981. Several distinctions exist, however, between the statutes under which those cases were tried and Title VII. Under Title VII, the statutory prerequisite for instituting an action in federal court is that the complainant first submit his claim to state and federal agencies. 42 U.S.C. § 2000e–5, *supra.* This requirement is not present under § 1981 or § 1983. The purpose of this requirement is to permit the state agency to attempt to resolve the matter under state law through voluntary conciliation and persuasion. *Alexander v. Gardner-Denver,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147, 156 (1974); 29 C.F.R. 1601.-12(a) (1977). Furthermore, Title VII provides for a *de novo* hearing by a federal court once the statutory prerequisites have been met. The Court must be mindful of these distinctions and their implications in evaluating the applicability of the holdings in *Winters* and *Mitchell* to the action at bar and in assessing the federal policies embodied in Title VII.

■ A review of the history of Title VII indicates that Congress intended the policy against discrimination, as manifested in the Civil Rights Act of 1964, be given the highest priority. *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam). "Consistent with this view, Title VII provides for consideration of employment discrimination claims in several forums. . . . And, in

---

4. 28 U.S.C. § 1738 extended the Full Faith and Credit provisions of the U.S. Constitution Article 4, § 1 to all courts, federal as well as state. *Davis v. Davis,* 305 U.S. 32, 40, 59 S.Ct. 3, 6, 83 L.Ed. 26, 29 (1938). *Also see Winters v. Lavine,* 574 F.2d 46, 54 (2d Cir. 1978); *American Mannex Corp. v. Rozands,* 462 F.2d 688, 690 (5th Cir.), *cert. denied,* 409 U.S. 1040, 93 S.Ct. 524, 34 L.Ed.2d 489 (1972).

5. *But see* Theis, *Res Judicata in Civil Rights Act Cases: An Introduction to the Problem,* 70 Nw.U.L.Rev. 859, 876 "Although section 1738 counsels the federal judge to resolve all res judicata problems in all cases as would a state judge, this admonition is unrealistic and impossible when the federal judge exercises a concurrent jurisdiction granted for special reasons."

general, submission of a claim to one forum does not preclude a later submission to another. Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." *Alexander v. Gardner-Denver Co.,* 415 U.S. at 47–49, 94 S.Ct. at 1019–1020, accord, 29 C.F.R. 1601.12(a) (1977). Accordingly, Title VII actions should not be subject to the collateral estoppel effects of section 1738 where the result would be the possible frustration of the congressional objectives embodied in Title VII, to wit, the availability of separate federal and state remedies and the independent adjudication of federal claims.

■ An earlier Title VII case involving circumstances similar to those presented in the action at bar discussed these policy considerations. In *Benneci v. Dep't of Labor,* 388 F.Supp. 1080 (S.D.N.Y.1975), the plaintiff claimed that the defendant had engaged in unlawful employment discrimination and discriminated against him because of his religion and national ancestry in violation of New York's Human Rights Law. After HRD determined that there had been no unlawful discriminatory practice, he appealed to the Appeals Board which affirmed. Benneci then appealed to the state appellate court which also affirmed. Having failed to secure relief from the state, he filed a complaint with the EEOC. When the EEOC determined that there was no reasonable cause to believe that an unlawful practice had been engaged in, plaintiff brought his action in federal court.

In refusing to give the state court's affirmance res judicata effect, the district court judge discussed the congressional objectives embodied in Title VII. In his opinion, Judge Knapp cited the Supreme Court's unanimous decision in *Alexander v. Gardner-Denver Co., supra,* wherein it was noted that the purpose of Title VII was to assure

equality of employment opportunities through cooperation and voluntary compliance. Title VII incorporates a procedure whereby existing state and local agencies as well as the EEOC would have an opportunity to settle disputes before the complainant was permitted to commence an action in federal court. The court in *Benneci* reasoned that to grant defendant's motion for summary judgment because the plaintiff had sought to comply with these procedures would defeat the general purpose of the statutory scheme. 388 F.Supp. at 1081. Furthermore, where the complainant has manifested a preference for the federal forum by initiating his action with EEOC rather than the state agency, he may be less inclined to actively and fully pursue his state claim, as envisioned by the statutory scheme, or to seek review of arbitrary state agency actions, if a possible loss of his federal claim would result. This statutory scheme is unique to Title VII actions and manifests Congress' intent that there be an initial resort to state remedies. A bar of a federal action because of collateral estoppel may well frustrate this congressional purpose. Consequently, a complainant's resort to state court review should not bar a Title VII action as it would under other federal civil rights statutes.

A further reason for distinguishing an action under Title VII from actions under other federal civil rights statutes is that Title VII expressly provides for a *de novo* hearing by a federal court. Although state courts may be said to be as capable of evaluating claims of discrimination as federal courts, where the reviewing state court does not have plenary power to try the matter anew, the barring of an independent federal action on grounds of collateral estoppel would have the effect of limiting the availability of a *de novo* hearing. Such a holding would impliedly restrict the express provision for a second independent hearing to those instances where the state proceedings had been terminated without state court review. There being no limitation of this nature on the availability of a *de novo* hearing imposed by the Congress, the insertion of a qualification by judicial fiat is unwarranted.

CONCLUSION

While *Benneci* was decided prior to the decision in *Mitchell,* the reasoning of *Benneci* is consistent with the later analysis of the Second Circuit Court of Appeals in *Mitchell.* The policy embodied in Title VII was intended to be effectuated by the entire procedure set forth in § 2000e–5 including the provision for a second, independent federal hearing. Truncating the procedure on the grounds of res judicata under these circumstances is not mandated by *Mitchell* and would be contrary to the apparent intent of Congress.

Accordingly, the defendant's motion to dismiss or, alternatively, for summary judgment is denied.

SO ORDERED.