**Rubin KREMER, Plaintiff-Appellant,**

v.

**CHEMICAL CONSTRUCTION CORPORATION,**
**Defendant-Appellee.**

**No. 773, Docket 79–7748.**

United States Court of Appeals,
Second Circuit.

Argued March 12, 1980.

Decided June 2, 1980.

David A. Barrett, New York City (Cravath, Swaine & Moore, New York City, Frederick A. O. Schwarz, Jr., New York City, of counsel), for plaintiff-appellant.

Donald M. Crook, New York City (Layton & Sherman, New York City, Robert Layton, and Thomas L. Abrams, New York City, of counsel), for defendant-appellee.

Before LUMBARD, FRIENDLY and MESKILL, Circuit Judges.

FRIENDLY, Circuit Judge:

Plaintiff Rubin Kremer was employed as an engineer by defendant Chemical Construction Corporation (Chemico). He was laid off, along with a number of other employees, on August 1, 1975. Some of these

employees were later rehired but Kremer was not, despite several applications. He claims that the termination and failure to rehire were due to his being of the Jewish faith; Chemico asserts it was due to legitimate business reasons.

Mr. Kremer filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(b), on May 6, 1976. The EEOC, as required by 42 U.S.C. § 2000e–5(c), referred his complaint to the New York State Division of Human Rights (NYHRD). NYHRD conducted an investigation which included examination of documents submitted by Chemico and three interviews with Mr. Kremer. On March 4, 1977, he requested the EEOC to undertake an investigation in light of the lack of progress by NYHRD. On April 28, 1977, NYHRD issued a Determination After Investigation which stated there was no probable cause to believe that Chemico had engaged in the discriminatory practice charged. Mr. Kremer appealed to the Appeal Board pursuant to N.Y. Executive Law § 297–a on both substantive and procedural grounds, and argued his case both orally and in writing. The Appeal Board affirmed the determination of the Division. Attached to the order of the Appeal Board was a notice that any complainant, respondent or other person aggrieved by the order might obtain judicial review by filing a proceeding in the appropriate Appellate Division within 30 days of service of the order.

Mr. Kremer again brought his complaint to the attention of the EEOC by letter dated December 4, 1977, and also filed, on December 6, 1977, a petition with the Appellate Division of the Supreme Court of New York for the First Department pursuant to § 298 of the N.Y. Human Rights Law and CPLR Article 78 to set aside the adverse determination of the NYHRD. On February 27, 1978, the Appellate Division unanimously ordered that the determination of the Appeal Board be confirmed.

Mr. Kremer did not endeavor to obtain review by the New York Court of Appeals. The District Director of the EEOC on May 11, 1978, made a determination concluding that there was not reasonable cause to believe that the charge of discrimination was true and issued a notice of right to sue in a United States district court. After the District Director, having reviewed the case file and spoken with the investigator, denied a request for reconsideration, Mr. Kremer brought this Title VII action in the District Court for the Southern District of New York.

Chemico moved for dismissal of the complaint or summary judgment on the basis that the determination of the Appellate Division constituted a bar under the reasoning of our decision in *Mitchell v. National Broadcasting Co.*, 553 F.2d 265 (2 Cir. 1977), where a divided panel held that a similar judgment operated as *res judicata* with respect to an action under 42 U.S.C. § 1981. Judge Pierce denied the motion in an opinion, 464 F.Supp. 468 (S.D.N.Y.1978), which sought to distinguish the *res judicata* effect of a state court determination on an action under Title VII from that upon an action under 42 U.S.C. § 1981, a point left open in the majority opinion in *Mitchell*, 553 F.2d at 275 n.13. Later, after our decision in *Sinicropi v. Nassau County*, 2 Cir., 601 F.2d 60, cert. denied, 444 U.S. 983, 100 S.Ct. 488, 62 L.Ed.2d 411 (1979), which applied the reasoning of *Mitchell* to a claim under Title VII, Chemico renewed its motion to dismiss or for summary judgment. Judge Sofaer, to whom the case had been transferred, felt constrained to grant the motion but delivered a lengthy opinion, 477 F.Supp. 587 (S.D.N.Y.1979), devoted mainly to an endeavor to show that the *Mitchell* and *Sinicropi* decisions were in error.

Appealing from the judgment of dismissal, Mr. Kremer, now represented by counsel, seeks reversal on two grounds: One is that *Sinicropi* was wrongly decided; the other is that it should not be applied "retroactively." [1]

---

1. While neither Judge Sofaer's opinion nor the brief of counsel for Mr. Kremer suggested that

*Sinicropi* was distinguishable, at the oral argument there was some discussion of a possible

■ This panel cannot properly entertain the claim that *Sinicropi* was wrongly decided. In the absence of any decisions by the Supreme Court or our own court in the brief interval since *Sinicropi* was decided that would cast doubt on its viability, and none has been called to our attention, a panel of this court will not overturn a recent decision of another panel, rendered after full consideration of the very point at issue. This is something to be done, if at all, only by the full court sitting *en banc*. See *United States v. Fatico*, 603 F.2d 1053, 1058 (2 Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980); *Ingram v. Kumar*, 585 F.2d 566, 568 (2 Cir. 1978), *cert. denied*, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979); *In re Jaylaw Drug, Inc.*, 621 F.2d 524, 527 (2 Cir. 1980); contrast *United States v. Taylor*, 464 F.2d 240, 242–44 (2 Cir. 1972) (1944 decision which was no longer being followed in practice; overruling opinion circulated to and approved by all judges in active service);

*Benjamins v. British European Airways*, 572 F.2d 913, 916–17 (2 Cir. 1978), *cert. denied*, 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979) (reconsideration by panel of two cases decided in the 1950's which appeared inconsistent with more recent decisions on a related subject); *Boothe v. Hammock*, 605 F.2d 661, 664 (2 Cir. 1979) (intervening Supreme Court decision).[2] We can be confident that the full court will have an opportunity to overrule *Sinicropi* if it wishes since counsel for Mr. Kremer advised us that he would seek rehearing *en banc* if we should affirm.[3]

We likewise reject the alternative argument that the *Sinicropi* decision should not be applied to this case because Mr. Kremer brought his proceeding in the Appellate Division a year and a half before it was rendered. "The general rule of long standing is that judicial precedents normally have retroactive as well as prospective effect." *National Association of Broadcasters v. FCC*, 554 F.2d 1118, 1130 (D.C.Cir.1976). To

distinction on the basis that Mr. Kremer had gone initially to the EEOC and was sent to the New York administrative agency by it pursuant to the deferral provision of 42 U.S.C. § 2000e–5(c), whereas Ms. Sinicropi began her proceeding in the NYHRD. Although this may make Mr. Kremer's case somewhat more attractive, we do not think the distinction has legal significance. Ultimately both claimants brought suit in a federal district court and the question is the binding effect of a determination by the Appellate Division in judicial proceedings initiated by them. If Ms. Sinicropi had gone first to the EEOC, she would have been sent to the New York administrative agency, exactly as was Mr. Kremer.

2. This is the rule in other circuits as well. See, e. g., *United States v. Caldwell*, 543 F.2d 1333, 1369 (D.C.Cir.), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976) (on petition for rehearing); *United States v. Inmon*, 594 F.2d 352, 354 (3 Cir.), *cert. denied*, 444 U.S. 859, 100 S.Ct. 121, 62 L.Ed.2d 78 (1979); *United States v. Lewis*, 475 F.2d 571, 574 (5 Cir. 1973); *Timmreck v. United States*, 577 F.2d 372, 376 n.15 (6 Cir. 1978), rev'd on other grounds, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); cf. Rules of the United States Court of Appeals for the Seventh Circuit, Rule 16 ("A proposed opinion approved by a panel of this court adopting a position which would overrule a prior decision of this court . . . shall not be published unless it is first circulated among the active members of this court and a majority

of them do not vote to rehear in banc the issue of whether the position should be adopted."). The only contrary expression we have found is in *Speigner v. Jago*, 603 F.2d 1208, 1212 n.4 (6 Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 1023, 62 L.Ed.2d 758 (1980) ("it would be a waste of judicial time and resources to automatically require an en banc hearing each and every time this Court overrules or modifies one of its previous decisions"). As noted, *en banc* rehearing is not required "each and every time" a previous panel decision is modified, but only when the basis for overruling the previous decision is simply that it is wrong although nothing new has occurred to show it to be so. The views expressed in *Speigner* were those of Judge Peck alone, since Chief Judge Edwards concurred separately, not finding it necessary to overrule the precedent in question, *id.* at 1215 n.1, and Judge Weick dissented, partly on the ground that "[n]o panel of this Court has the power or right to overrule the decision of another panel." *Id.* at 1217. For an illustration of the difficulties that can arise from panels taking divergent courses, see *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974).

3. Rehearing *en banc* was denied in *Sinicropi* itself when no active judge or judge who was a member of the panel requested that a vote be taken pursuant to a petition for rehearing *en banc*.

this general rule the Supreme Court has announced an exception which was defined, with respect to civil cases, in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971):

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, *e. g., Hanover Shoe Inc. v. United Shoe Machinery Corp., supra*, [392 U.S. 481] at 496, [88 S.Ct. 2224, 20 L.Ed.2d 1231] or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, *e. g., Allen v. State Board of Elections, supra*, [393 U.S. 544] at 572 [89 S.Ct. 817, 22 L.Ed.2d 1]. Second, it has been stressed that "we must . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purposes and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker, supra*, [381 U.S. 618] at 629 [85 S.Ct. 1731, 14 L.Ed.2d 601]. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Cipriano v. City of Houma, supra*, [395 U.S. 701] at 706 [89 S.Ct. 1897, 23 L.Ed.2d 647].

Although the Court was not obliged to decide in *Chevron* whether it was necessary to pass each of these hurdles to secure a denial of retrospectivity, since it found all the required factors were present, the courts of appeals have held that unless the first factor is satisfied, there is no occasion to consider the other two. *United States v. Bowen*, 500 F.2d 960, 975 & n.1 (9 Cir. 1974), *aff'd*, 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975); *Ferguson v. United States*, 513 F.2d 1011, 1012 (2 Cir. 1973); *Jordan v. Weaver*, 472 F.2d 985, 996 (7 Cir. 1973), *rev'd on other grounds sub nom. Edelman v.*

*Jordan*, 415 U.S. 651, 658–59 n.7, 94 S.Ct. 1347, 1353–54, 39 L.Ed.2d 662 (1974). This finds support not only in the language of the *Chevron* opinion itself, 404 U.S. at 106, 92 S.Ct. at 355 ("the decision to be applied nonretroactively *must* establish a new principle of law") (emphasis supplied), see *Jordan v. Weaver, supra*, 472 F.2d at 996, but also by other Supreme Court decisions analyzing questions of retrospectivity. See, e. g., *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 499, 88 S.Ct. 2224, 2234, 20 L.Ed.2d 1231 (1968) (decisions applied retrospectively because they "did not constitute a sharp break in the line of earlier authority or an avulsive change which caused the current of the law thereafter to flow between new banks"); *Desist v. United States*, 394 U.S. 244, 248, 89 S.Ct. 1030, 1032, 22 L.Ed.2d 248 (1969) (retrospectivity analysis appropriate where decision was "a clear break with the past"); *Gosa v. Mayden*, 413 U.S. 665, 673, 93 S.Ct. 2926, 2932, 37 L.Ed.2d 873 (1973) (same for "a decisional change in attitude that had prevailed for many decades"). Six months after writing *Chevron*, Justice Stewart wrote that "[a]n issue of the 'retroactivity' of a decision of this Court is not even presented unless the decision in question marks a sharp break in the web of the law." *Milton v. Wainwright*, 407 U.S. 371, 381 n.2, 92 S.Ct. 2174, 2180, 33 L.Ed.2d 1 (1972) (Stewart, J., dissenting; the majority did not reach the issue). See generally Beytagh, *Ten Years of Non-Retroactivity: A Critique and A Proposal*, 61 Va.L.Rev. 1557, 1582–83, 1608–09 (1975). Any broader reading of *Chevron* would require courts to engage in the balancing process demanded by the second and third factors whenever a recognized legal principle, here *res judicata*, had been applied—or not applied—to a situation not precisely covered by previous decisions.

■ Under the first *Chevron* test it is not sufficient that the decision determines a point of law on which the court had not previously passed. In order to invoke nonretroactivity the decision must have established "a new principle of law, either by

overruling clear past precedent on which litigants may have relied, . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Chevron, supra,* 404 U.S. at 106–07, 92 S.Ct. at 355. *Sinicropi* certainly did not overrule a "clear past precedent on which litigants may have relied." Prior to *Mitchell,* as shown by Judge Feinberg's dissent, 553 F.2d at 277–80, the application of state decisions to actions under various federal civil rights statutes as *res judicata* in general and under 28 U.S.C. § 1738 [4] in particular was an area of considerable turmoil. The specific question decided in *Sinicropi* was expressly left open in *Mitchell, supra,* 553 F.2d at 275 n.13, which was decided some time before Mr. Kremer took his case to the Appellate Division. There was thus nothing on which Mr. Kremer could have relied since *Mitchell* "clearly foreshadowed" *Sinicropi.* While, as stated, the *Mitchell* majority left the point open, its reasoning, 553 F.2d at 275–76, dictated the *Sinicropi* result. See *Shea v. City of St. Paul,* 601 F.2d 345, 351 (8 Cir. 1979). Judge Feinberg made this a principal ground of his *Mitchell* dissent, 553 F.2d at 278, and joined in the *per curiam* panel opinion in *Sinicropi* which stated "we all believe that the reasoning of that [the *Mitchell*] decision controls this one." Against all this it is of no moment that at the time Mr. Kremer resorted to the Appellate Division there were five district

court decisions,[5] two in this circuit, which held that an adverse state judicial decision in a proceeding initiated by the plaintiff did not bar a Title VII action. See *Cates v. Trans World Airlines, Inc.,* 561 F.2d 1064, 1072–74 (2 Cir. 1974).

We add that if it were necessary to consider the second and third *Chevron* factors, our conclusion would not be different. Retrospective application of *Sinicropi* would surely further rather than retard the operation of a principle designed to prevent relitigation in the federal courts of issues already determined by the state courts. The third factor likewise is not met. A litigant represented by counsel would have known, even before *Mitchell* and surely thereafter, that going from the state administrative agency to the state courts involved serious risk of the application of *res judicata* if the state court decision was adverse. No one contends that Mr. Kremer, who was acting *pro se,* had any knowledge of the district court decisions, or, for that matter, of *Mitchell.*[6] It cannot therefore be said that litigants in Mr. Kremer's position had any justifiable reliance interest which it would be inequitable to violate by retrospective application of *Sinicropi.* See *Dasho v. Susquehanna Corp.,* 461 F.2d 11, 21 (7 Cir.), *cert. denied,* 408 U.S. 925, 92 S.Ct. 2496, 33 L.Ed.2d 336 (1972) (guiding principle is "to

---

**4.** This reads:

> The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.
>
> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
>
> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

**5.** *Young v. South Side Packing Co.,* 369 F.Supp. 59 (E.D.Wis.1973); *Benneci v. Dep't of Labor,* 388 F.Supp. 1080 (S.D.N.Y.1975); *Beck v. Mather,* 417 F.Supp. 648 (W.D.Va.1976); *Al-Hamdani v. State University of New York,* 438 F.Supp. 299 (W.D.N.Y.1977); *Nickel v. Highway Industries, Inc.,* 441 F.Supp. 477 (W.D. Wis.1977). Only the latest two of these decisions, in addition to Judge Pierce's opinion in this case, *supra,* 464 F.Supp. 468, were decided after *Mitchell.*

**6.** Some point is made that the notice given to Mr. Kremer by the Appeal Board of his right to obtain review in the Appellate Division may have misled him as to the consequences of failure in that court on a Title VII action. The notice was a commendable effort to inform Mr. Kremer of his rights under New York law; the Appeal Board was under no obligation to go further.

avoid unfairness to parties who may have acted in reliance on the old rule").

The judgment is affirmed.