Dr. William WELCH III, Dr. Andrew Guest, and Mrs. Elizabeth Guest, Plaintiffs–Appellants,

v.

CADRE CAPITAL, R. Laken Mitchell, Esq., John Roberts, Edna Lou Ballard, Norman Ballard, Financial Centre Securities, Northwest Mutual, a Savings Institution, Defendants–Appellees,

Mutual Fire & Marine Inland Insurance Company, Defendant.

No. 263, Docket 90–7419.

United States Court of Appeals, Second Circuit.

Argued Sept. 26, 1990.

Decided Jan. 22, 1991.

Peter Luria, West Hartford, Conn., for plaintiffs-appellants.

Alexandra Davis, Hartford, Conn. (Kimberly A. Knox, Moller, Horton & Fineberg, and Antoinette L. Ruzzier, Hartford, Conn., on the brief), for defendants-appellees Roberts, Edna Lou Ballard, Norman Ballard, and Financial Centre Securities.

Russell J. Ober, Jr., Pittsburgh, Pa. (Steven Petrikis, Rose Schmidt Hasley & DiSalle, Pittsburgh, Pa., and Robert L. Wyld, Linda L. Yoder, Shipman & Goodwin, Hartford, Conn., on the brief), for defendant-appellee Northwest Sav. Bank.

J. Jeffrey Coughlin, Bridgeport, Conn. (Bai, Pollock & Dunnigan, Bridgeport, Conn., on the brief), for defendant-appellee Cadre Capital.

Before NEWMAN, PIERCE, and ALTIMARI, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

In *Ceres Partners v. GEL Associates*, 918 F.2d 349 (2d Cir.1990), we abandoned the practice of applying analogous state statutes of limitations to actions brought under section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and rule 10b–5, 17 C.F.R. § 240.10b–5 (1990). Following intimations from the Supreme Court, *see Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), we opted for a uniform federal limitations period and selected the limits specified in sections 9(e) and 18(c) of the '34 Act, 15 U.S.C. §§ 78i(e), 78r(c)—one year from discovery of the violation and three years from the violation. The issue in the pending appeal is whether the new limitations rule of *Ceres* should be applied retroactively, an issue *Ceres* did not resolve.

The issue arises on an appeal by William Welch and Andrew and Elizabeth Guest from the April 12, 1990, order of the District Court for the District of Connecticut (Alan H. Nevas, Judge) granting a motion to dismiss their '34 Act claims against a group of eight defendants allegedly responsible for defrauding plaintiffs into buying and maintaining limited partnership shares in an ill-fated oil and gas drilling venture. *Welch v. Cadre Capital*, 735 F.Supp. 467,

476 (D.Conn.1989). Judge Nevas found plaintiffs' '34 Act claims time-barred under the federal limitations period this Circuit adopted in *Ceres*, decided after his decision. We conclude that this case falls within the exception to the general practice of applying new judicial decisions retroactively. We therefore reverse and remand.

## BACKGROUND

The complaint alleges the following facts as grounds for plaintiffs' '34 Act claims. William Welch and Andrew and Elizabeth Guest each purchased limited partnership interests in the Keystone 84–1 Oil and Gas Drilling Program. The Keystone Program, for which defendant Cadre Capital served as managing general partner, involved a venture to drill at least six oil and gas wells. To become limited partners, Welch and the Guests were required to purchase one or more discrete interests in Keystone; the price for each interest was a $5,000 cash payment and execution of a $15,000 promissory note. The Guests purchased six limited partnership interests on May 10, 1984, based on representations made by defendants Edna Lou and Norman Ballard, acting on behalf of defendant Financial Centre Securities. On May 25, 1984, Welch purchased two limited partnership interests on the recommendation of defendant John Roberts, then a registered broker with Financial Centre Securities. In July of 1984, defendant R. Laken Mitchell, counsel for the general partnership, informed Welch and the Guests that their notes had been assigned to defendant Northwest Savings Bank as collateral for loans used to finance drilling operations. Defendant Mutual Fire & Marine Inland Insurance Company guaranteed payment of the assigned notes on behalf of the general partnership.

Welch and the Guests first learned of Keystone's demise in early 1987. Welch heard of Keystone's "financial difficulties" from defendant Roberts in January 1987. The Guests remained unaware until March 1987 when Financial Centre Securities informed them of Keystone's insolvency. Welch and the Guests subsequently brought suit on October 17, 1988, in the District Court for the District of Connecticut. The first two counts of their six-count complaint alleged violations of the mandatory registration provisions of the 1933 Securities Act, § 5(a), (c), 15 U.S.C. § 77e(a), (c), and the anti-fraud provisions of the '33 Act, §§ 12, 17, 15 U.S.C. §§ 77*l* and 77q(a), and section 10(b) of the 1934 Securities and Exchange Act, 15 U.S.C. § 78j(b) and rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder. In addition to suing for primary violations of the '34 Act, the plaintiffs also alleged that Northwest Savings Bank and Mutual Fire & Marine Inland Insurance Company aided and abetted the commission of securities fraud by the other defendants. The other four counts sought relief for violations of the anti-fraud provision of the Connecticut Uniform Securities Act, Conn.Gen.Stat. § 36–498 (1989), common law fraud, breach of fiduciary duty, and negligent misrepresentation.

By order dated August 17, 1989, Judge Nevas granted defendants' motion to dismiss the '33 Act claims. *See Welch v. Cadre Capital*, 735 F.Supp. 467 (D.Conn. 1989). Deferring decision on the '34 Act claims, Judge Nevas informed the parties that he would decline to exercise jurisdiction over the pendent state law counts should the '34 Act claims later be dismissed. *Id.* at 476. In a subsequent decision, Judge Nevas anticipated this Circuit's decision in *Ceres* and adopted the one-year/three-year limitations period. *Id.* at 476–77. He then ruled that the new limitations period should be applied retroactively in this case. Since appellants filed their suit more than one year after discovery of the alleged fraud, the '34 Act claims were dismissed in an order dated April 12, 1990. With all federal claims dismissed, Judge Nevas then dismissed without prejudice the pendent state law counts on May 24. Judgment was entered on May 25. Without awaiting entry of judgment, appellants filed on May 2, 1990, a notice of appeal from the April 12th order.

## DISCUSSION

### I. Appellate Jurisdiction

■ Initially, we must determine our appellate jurisdiction, which is called into

question by the appellants' failure to notice an appeal from the final judgment dismissing all claims. Prior to oral argument, we invited the parties to consider whether the appeal could be entertained on the basis of the premature notice of appeal from the April 12 order dismissing the federal claims, but leaving the pendent state law claims for dismissal a month later.

■■■ On prior occasions we have indicated that a premature notice of appeal from a nonfinal order may ripen into a valid notice of appeal if a final judgment has been entered by the time the appeal is heard and the appellee suffers no prejudice. *See Festa v. Local 3, International Brotherhood of Electrical Workers*, 905 F.2d 35, 36–37 (2d Cir.1990); *Schlehan v. Olympic Worldwide Communications, Inc.*, 763 F.2d 135, 138 (2d Cir.1985); *Pireno v. New York State Chiropractic Association*, 650 F.2d 387, 389–90 n. 4 (2d Cir. 1981), *aff'd on other grounds sub nom. Union Labor Life Insurance Co. v. Pireno*, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982); *cf. Matarese v. LeFevre*, 801 F.2d 98, 104–06 (2d Cir.1986) (premature appeal of order, subsequently entered, denying rule 60(b) motion), *cert. denied*, 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987).[1] Though there may be limits upon our willingness to permit a premature notice of appeal to "ripen" after entry of a final judgment, *see* 16 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3950, at 392 (Supp.1990), it is appropriate to entertain jurisdiction in this case.[2] Judge Nevas made clear in the August 17, 1989, order disposing of the '33 Act claims that he would exercise his discretion to dismiss the state law counts if the '34 Act counts were later found to be time-barred. In light of this clearly-expressed intention, the order of April 12, 1990, granting defendants' motion to dismiss the '34 Act claims, effectively signaled the end of the case. Appellees are not prejudiced by our accepting jurisdiction based on the premature notice of appeal, now that a final judgment has been entered.[3]

## II. Retroactivity of *Ceres*

■■■ In *Ceres* this Circuit replaced the longstanding practice of borrowing the most analogous state statute of limitations for claims founded on section 10(b) of the '34 Act and rule 10b–5 with the limitations periods statutorily prescribed for private causes of action expressly provided by the '34 Act. *See* 15 U.S.C. §§ 78i(e) and 78r(c). First adopted by the Third Circuit, *see In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.) (in banc), *cert. denied*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), and more recently by the Seventh Circuit, *see Short v. Belleville Shoe Manufacturing Co.*, 908 F.2d 1385 (7th Cir.1990), this "one-year/three-year" formulation bars any suit

1. This approach appears to have originated with *Yaretsky v. Blum*, 592 F.2d 65, 66 (2d Cir.1979) ("[T]he better rule is that in the absence of prejudice to the appellee, the court should treat a premature appeal as from a final judgment so as to avoid denial of justice, expense, and inconvenience."). Since the premature notice of appeal in *Yaretsky* was filed during pendency of a Rule 59(e) motion, the holding of *Yaretsky* has been superseded by Fed.R.App.P. 4(a)(4), as the Supreme Court subsequently noted. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 59, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). Nevertheless, the philosophy of *Yaretsky*, tolerating a premature notice of appeal, remains valid so long as the notice is not nullified under Fed.R.App.P. 4(a)(4), as our decisions in *Festa, Schlehan,* and *Pireno* recognize.

2. Though we are willing to accept appellate jurisdiction despite the prematurity of the notice of appeal, we do not rest decision upon Fed.R. App.P. 4(a)(2), which treats a notice of appeal filed after announcement but before entry of an order as if it had been filed "after such entry and on the day thereof." That provision applies only to an order that is final. *See Marsh–McBirney, Inc. v. Montedoro–Whitney Corp.*, 882 F.2d 498, 503 (Fed.Cir.1989); *United States v. Hansen*, 795 F.2d 35, 37 (7th Cir.1986); 9 *Moore's Federal Practice* ¶ 204.14, at 4–128 (2d ed. 1990). It is the entry of the final judgment dismissing all claims, not the entry of the April 12 order dismissing the '34 Act claims, that permits us to entertain the appeal.

3. Appellees could have moved to dismiss the premature appeal at any time prior to entry of final judgment. In the circumstances of this case, it would be inequitable to permit them to obtain a dismissal of the premature appeal now that the time for filing a notice of appeal from the final judgment has expired.

filed more than one year after discovery of the fraud or more than three years after the violation. The Third Circuit has applied the federal limitations period retroactively, *Hill v. Equitable Trust Co.*, 851 F.2d 691 (3d Cir.1988), *cert. denied*, 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989), although the ruling had no adverse consequence for the plaintiffs since their claims would have been barred under the equivalent limitations period of applicable state law. Like the Seventh Circuit, *see Short*, 908 F.2d at 1390; *Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1123 (7th Cir.1990), we have yet to pass on the question. Because plaintiff's 10b–5 claims were properly dismissed under either approach, the panel in *Ceres* was not faced with and expressly left unresolved the retroactive application of the "one-year/three-year" limitations period. *See Ceres*, 918 F.2d at 364. The pending case squarely presents the issue left unresolved in *Ceres*.[4] Under the traditional borrowing approach, we would look to the law of Connecticut as the forum state to determine the limitations period, *see Armstrong v. McAlpin*, 699 F.2d 79, 86–87 (2d Cir.1983), and to federal law for guidance as to the appropriate equitable tolling principle. *See IIT, An International Investment Trust v. Cornfeld*, 619 F.2d 909, 929 (2d Cir.1980). Federal courts in Connecticut have long considered the most appropriate limitations period for 10b–5 claims to be that found in the Connecticut Uniform Securities Act, which proscribes the bringing of suit "more than two years after the contract of sale." Conn. Gen.Stat. § 36–498(f) (1989); *Clute v. Davenport Co.*, 584 F.Supp. 1562, 1577 (D.Conn.1984); *Dandorph v. Fahnestock & Co.*, 462 F.Supp. 961, 963 n. 4 (D.Conn. 1979); *Hitchcock v. deBruyne*, 377 F.Supp. 1403 (D.Conn.1974). Though application of this provision alone would bar the instant suit, the plaintiffs are entitled, by virtue of their allegations of active concealment of fraud, to tolling of the limitations period until their discovery of the fraud in 1987. *See Baskin v. Hawley*, 807 F.2d 1120, 1130–31 (2d Cir.1986); *Robertson v. Seidman & Seidman*, 609 F.2d 583, 593 (2d Cir.1979). Thus, under prior law, their commencement of suit in October of 1988 would be timely. Under the newly-adopted "one-year/three-year" rule, the plaintiffs would have been obliged to bring suit in March of 1988 at the latest, one year after the Guests' discovery of the alleged fraud.

We look to the three-part test set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), to determine whether this rule should be applied retroactively to bar the plaintiffs' '34 Act claims. *Chevron* recognized for civil actions a narrow exception to the general presumption favoring application of the law prevailing at the time of appeal. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 662, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987); *Gonzalez v. Home Insurance Co.*, 909 F.2d 716, 723 (2d Cir.1990). To qualify for purely prospective application, a decision "must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Chevron*, 404 U.S. at 106, 92 S.Ct. at 355.[5] A court should then "weigh" in each case whether retroactive application would conflict with the purposes of the rule and whether it would produce inequitable results.[6] *Id.* at 106–07, 92 S.Ct. at 355–56.

An initial issue in applying *Chevron* is whether the proponent of a prospective-

---

4. The appellant's failure to raise the issue of retroactivity does not preclude this Court from considering the issue. *See Teague v. Lane*, 489 U.S. 288, 300, 109 S.Ct. 1060, 1069, 103 L.Ed.2d 334 (1989) (plurality opinion). Such consideration is especially appropriate since *Ceres* was decided not only after the complaint was filed, but after this appeal was heard.

5. It is worth emphasizing that the first prong of the *Chevron* test requires only a prior rule on which plaintiffs "may" have relied, and does not create a test of actual reliance.

6. Whether *Chevron* retains validity for issues of retroactivity outside the context of statutes of limitations has been placed in doubt by *American Trucking Associations, Inc. v. Smith*, —— U.S. ——, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990), in which one Justice appears to reject *Chevron* altogether, *id.* 110 S.Ct. at 2343 (Scalia, J., concurring in the judgment), and four Justices appear to regard it as controlling only as to federal court remedies, *id.* at 2345, 2352–55 (Stevens, J., with whom Brennan, Marshall, and Blackmun, JJ., join, dissenting).

only application must satisfy all three of the *Chevron* factors. Judge Nevas read our decisions in *Kremer v. Chemical Construction Corp.*, 623 F.2d 786 (2d Cir.1980), *aff'd on other grounds*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), and *Holzsager v. Valley Hospital*, 646 F.2d 792 (2d Cir.1981), as requiring that the proponent do so. *Welch v. Cadre Capital*, 735 F.Supp. at 482. We disagree. What *Kremer* makes clear is that the first factor is mandatory. "[U]nless the first factor is satisfied, there is no occasion to consider the other two." *Kremer*, 623 F.2d at 789. If the proponent of nonretroactivity clears the first hurdle, the court then proceeds to the "balancing process demanded by the second and third factors." *Id.* A "balancing process" does not require that all relevant factors be established. *Holzsager* merely pointed out that the three *Chevron* factors would "inform" the decision as to retroactivity. *Holzsager*, 646 F.2d at 797.

■ Examining the first *Chevron* factor, we conclude that *Ceres*, which overrules well-established precedent, meets the threshold requirement for nonretroactive application. Adoption of a uniform federal limitations period changes the practice in this Circuit, which was clear at the time the alleged fraud was discovered, of looking to the law of the forum state for an appropriate statute of limitations for 10b–5 claims. In Connecticut, as we have noted, every court to have considered the issue has ruled that this entails combining the two-year limitations period in the Connecticut Uniform Securities Act with the federal equitable tolling doctrine. Though some of the Supreme Court decisions forming the doctrinal foundation for *Ceres'* rejection of the borrowing approach had already been decided by 1987, around the time plaintiffs discovered the alleged fraud, *see Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, *supra*; *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the impending revision of a limitations period for 10b–5 claims was not so clearly foreshadowed that plaintiffs were chargeable with its prediction.

Application of the second *Chevron* factor—effect of retroactive application upon the rule in question—is more problematical. Though *Chevron* concerned the retroactivity of a limitations ruling, the issue arose in a context quite different from the one we face here. In *Chevron* the new limitations standard was the one-year period of state law, rather than the prior, more indeterminate laches standard of admiralty law. The new standard was applicable by virtue of the Supreme Court's decision in *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), which held that injuries at locations such as that involved in *Chevron* were governed by state law under the Court's new interpretation of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* (1988) ("the Lands Act"). When the Court inquired as to whether retroactivity would aid or hinder "the rule in question," *Chevron*, 404 U.S. at 107, 92 S.Ct. at 355, it focused, not on the new rule of limitations, but on the new rule, announced in *Rodrigue*, of absorbing state law as federal law under the Lands Act, *id.* at 107–08, 92 S.Ct. at 355–56. The purpose of that rule was to aid injured employees by affording comprehensive remedies, a purpose that would have been impaired by retroactive application of a new and shorter limitations period.

Obviously, if "the rule in question" is the new limitations period itself, its retroactive application will always further the new rule: A new, shorter period will end a lawsuit filed beyond the new limits, and a new, longer period will allow a lawsuit otherwise barred. We doubt that the Court in *Chevron* contemplated such a mechanical inquiry. Some indication that it did not arises from the fact that the text quoted in *Chevron* to articulate the second factor is from *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965). *Linkletter* held that the exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), would not be applied retroactively because the deterrent effect of *Mapp* could not be achieved as to police conduct occurring prior to decision in that case. *See Linkletter*, 381 U.S. at 637, 85 S.Ct. at 1742, *see also American*

*Trucking Associations, Inc. v. Smith,* — U.S. ——, 110 S.Ct. 2323, 2332, 110 L.Ed.2d 148 (1990) (plurality opinion) (applying second *Chevron* factor by examining purpose of the Commerce Clause, which provided the rationale for the particular rule whose retroactivity was at issue).

In the pending case, the application of a new and shorter limitations period (one year after discovery of the fraud) cannot affect the conduct of the plaintiffs where the new rule is announced after expiration of that period. As with all statutes of repose, the one-year/three-year limitations period advances the remedial and deterrent purposes of the particular cause of action and preserves the defendant's interest in repose by simultaneously giving notice to potential plaintiffs of the time within which suit must commence and to potential defendants of the time beyond which exposure to liability ceases. Because they serve primarily individual, rather than institutional, interests and do so by giving potential litigants prior notice of their rights, application of a limitations period not yet in existence at the time suit was commenced clearly does not further either of the competing interests. The second *Chevron* inquiry thus favors a different result in this case than in *Kremer,* 623 F.2d at 790, and *Gargiul v. Tompkins,* 790 F.2d 265, 274 (2d Cir.1986), in which the purpose furthered by the new rule under consideration, the institutional interest in federal and state court comity, was equally well served regardless of whether litigants had received prior notice. Moreover, we do not agree with Judge Nevas that permitting plaintiffs' suit to be maintained will "frustrate" the "schema of the 1934 Act." 735 F.Supp. at 484. The purposes of the '34 Act will not be impaired by continuation of a handful of lawsuits filed within the longer time limits of previously applicable state law.

As to the third *Chevron* factor, we believe the equities favor the plaintiffs. Taking plaintiffs' allegations as true at this stage of the litigation, defendants' active concealment of fraud, rather than anything attributable to the plaintiffs, caused the initial three-year delay between violation and discovery of the fraud. And unlike the twenty-month delay in *Holzsager,* the sub-sequent one-and-a-half-year delay was not the result of procedural maneuvering designed to achieve a tactical advantage. Though, as Judge Nevas pointed out, plaintiffs, in not filing suit promptly after discovery of the fraud, could not be certain that a court would subsequently agree with their assertion as to the interval of equitable tolling, we see no reason in this case to fault them for taking most of the then applicable two-year period after discovery of alleged fraud to determine whether they had grounds for suit. Accordingly, retroactive application of the rule in *Ceres* would unjustly deny plaintiffs' "right to a day in court." *Chevron,* 404 U.S. at 108, 92 S.Ct. at 356.

▪ Defendant Northwest Savings Bank presents as an alternative ground for affirming the District Court's dismissal of the 10b–5 aiding and abetting claim plaintiffs' failure to plead with specificity the element of "substantial assistance." *See National Union Fire Insurance Co. v. Turtur,* 892 F.2d 199, 206–07 (2d Cir.1989). The proper time and place for raising this point is on remand before the District Court where, if need be, plaintiffs can be afforded an opportunity to replead.

The judgment of the District Court is reversed, and the case is remanded.