592 F.2d 65
 William YARETSKY, Ralph Cuevas, and the Gray Panthers, New
York Chapter, Appellees,
and
Mary Foley, Rae Wolper, Rose Shulman, Bessie Rossoff,
Pauline Ashkenazy, Sadie Birenzweig, Martha Zahl, Edna
Kolman, James Lundy, and Philomena Latona Lundy, on behalf
of themselves and all others similarly situated,
Intervenors- Appellees,
v.
Barbara BLUM, Individually and as Acting Commissioner of the
New York State Department of Social Services, Robert Whalen,
M. D., Individually and as Commissioner of the New York
State Department of Health, Appellants.
 No. 13, Docket 78-7077.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 12, 1978.
Decided Jan. 16, 1979.
 
 Emanuel M. Kay, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., Kevin J. McKay, Asst. Atty. Gen., New York City, of counsel), for appellants.
 John E. Kirklin, The Legal Aid Society, New York City (Philip M. Gassel, Legal Services for the Elderly Poor, New York City, Joan Mangones and David Goldfarb, The Legal Aid Society, Staten Island, N. Y., Kalman Finkel, The Legal Aid Society, New York City, and Ellice Fatoullah, MFY Legal Services, Inc., New York City, of counsel), for appellees.
 Before LUMBARD and OAKES, Circuit Judges, and MacMAHON, District Judge.*
 PER CURIAM:
 
 
 1
 This is an appeal from an order of the United States District Court for the Southern District of New York, Constance Baker Motley, Judge,[1] dated January 5, 1978, but filed January 10, 1978. The order granted appellees' motion for a preliminary injunction against appellants to prevent them from failing to provide resident patients in health care facilities with timely and adequate written notice of the decision to transfer them to a reduced care facility and to reduce or terminate their Medicaid benefits. On January 19, 1978, appellants filed a motion under Fed.R.Civ.P. 59(e) to amend the preliminary injunction to allow the health care facility itself to provide the notice required of the state or local supervisory agencies and to withhold from the patient information in his file if disclosure was "medically contraindicated." On February 6, 1978, while the motion was pending, appellants filed a notice of appeal from the preliminary injunction. On February 21, 1978, the district court denied appellants' Rule 59(e) motion. On appeal, appellants raise essentially the two points that they made in the Rule 59(e) motion. Appellees defend on the merits the district court's preliminary injunction as issued, and thus the district court's denial of the Rule 59(e) motion, but they also question this court's jurisdiction over the appeal. We address the jurisdiction issue first.
 
 
 2
 Appellees argue that the notice of appeal was filed during the pendency of the Rule 59(e) motion and a premature notice of appeal is "a legal nullity." Appellants suggest that because they filed the Rule 59(e) motion fourteen days after the date of the district court's order, albeit nine days after the date of the filing of the order, the motion was untimely and thus did not toll the period for filing the appeal. We hold otherwise, however.
 
 
 3
 Although the district court's order was dated January 5, 1978, the clerk entered the order in the docket on January 10, 1978. Under Fed.R.App.P. 4(a), which speaks of the "entry of judgment" as the crucial date, and Fed.R.Civ.P. 58 and 79(a), which provide that a judgment becomes effective only when entered in the docket, the date of the entry in the docket, not the date of the order, begins the running of time for post-trial motions and appeals. See, e. g., Neely v. Merchants Trust Co. of Red Bank, 110 F.2d 525 (3d Cir. 1940); See 6A Moore's Federal Practice, P 58.03(1) (2d ed. 1973).
 
 
 4
 The appeal was thus premature. Although the filing of a notice of appeal within the prescribed time limits is a jurisdictional prerequisite to the appeal itself, the better rule is that in the absence of prejudice to the appellee, the court should treat a premature appeal as from a final judgment so as to avoid denial of justice, expense, and inconvenience. This rule applies to appeals that are premature not only because they were filed between the pronouncement of judgment and the entry of judgment, See Lemke v. United States, 346 U.S. 325, 74 S.Ct. 1, 98 L.Ed. 3 (1953), but also because they were filed while a Rule 59 motion was pending. See, e. g., Dougherty v. Harper's Magazine Co., 537 F.2d 758, 762 (3d Cir. 1976); Stokes v. Peyton's Inc., 508 F.2d 1287 (5th Cir. 1975); Song Jook Suh v. Rosenberg, 437 F.2d 1098 (9th Cir. 1971); See 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3915, at 599-600 (1976). Appellees have alleged no prejudice, nor could they, because they had notice of the grounds for appeal from the Rule 59(e) motion itself.
 
 
 5
 We thus reach the two issues raised on the merits. Appellants argue first that the district court erred in refusing to allow the health care facility itself to provide the notice to the resident patient of the decision to transfer him to a reduced care facility and to reduce or terminate his Medicaid benefits. The district court's order, which enjoined appellants from implementing this single notification procedure, required adherence to the dual notification procedure previously in effect. Under that procedure, the facility's Utilization Review Committee informs the patient of its decision that his continued stay at the facility is not medically necessary and that a lower level of care would be more suitable to his condition; the local social services agency or office then notifies the patient of his right to a fair hearing to review the Committee's decision and the due process rights to which the patient is entitled at the hearing. Appellants contend, although we note that there is no supporting evidence in the record, that the dual notification procedure "proved to be cumbersome to administer, inefficient and confusing to the patient" and that the single notification procedure, by contrast, "would benefit the patient and help streamline the complex network of Medicaid regulations." But regardless of how we may feel about seemingly unnecessary bureaucratic red tape, the HEW regulations clearly require the state or local agency to provide the notice of transfer or reduction or termination of benefits, 45 C.F.R. § 205.10(a)(4)(i),[2] and further seem to preclude delegation of the responsibility. Id. § 205.100(b)(1).[3] Appellants cite no authority for allowing a private party such as the health care facility to provide the notice required by due process before the State can reduce public assistance benefits.
 
 
 6
 Moreover, it is not irrational to treat the functions of the Utilization Review Committee and the state and local social services agencies as diverse. As a part of the process of keeping a patient informed about his condition and proposed medical treatment, the Committee is the one to inform the patient of the decision to reduce the level of care that he is receiving; consistent with this doctor-patient framework, 42 C.F.R. § 450.19(a)(3)(ix)(F) requires the Committee to provide this preliminary notice. The state agency, however, bears ultimate responsibility for informing the patient of the resulting reduction or termination of his health care benefits and advising him of his due process rights to a hearing to review the Committee's decision. If, as appellants contend, the proposed single notification system is clearly superior and would not result in the failure of patients to receive written notice of their fair hearing rights, as happened to appellees in this case, the remedy lies in persuading HEW to amend its regulations.[4] Neither appellants nor the court can unilaterally change the federally imposed notification procedure.
 
 
 7
 Appellants also challenge, in a somewhat appealing argument, the district court's refusal to exclude "medically contraindicated" information from the scope of the disclosure required of the agency to the patient preparing the defense that he will use at the fair hearing. The HEW regulations provide that "(t)he claimant, or his representative, shall have adequate opportunity . . . (t)o examine the contents of his case file and all documents and records to be used by the agency at the hearing at a reasonable time before the date of the hearing as well as during the hearing." 45 C.F.R. § 205.10(a)(13)(i). Thus the regulations requiring disclosure do not facially exempt medically contraindicated information. See Feld v. Burger, 424 F.Supp. 1356, 1363 (S.D.N.Y.1976); Cf. Areizaga v. Quern, 442 F.Supp. 168, 172-73 (N.D.Ill.1977) (no exemptions from disclosure); Dunbar v. Toia, 61 A.D.2d 914, 403 N.Y.S.2d 4 (1st Dep't), Aff'd, 45 N.Y.2d 764, 408 N.Y.S.2d 495, 380 N.E.2d 321 (1978) (same). Moreover, an exemption for medically contraindicated information would tend to frustrate the purpose of the requirement of disclosure. As appellees point out, very often the medically contraindicated information will be the information most useful to a patient in contesting an adverse Utilization Review Committee decision. If the information indicates a condition or prognosis unfavorable enough to upset the patient severely, perhaps it also is unfavorable enough to provide the patient with a defense against the Committee's determination that he does not require a continuation of the level of medical care that he has been receiving.
 
 
 8
 Appellants' brief on appeal argues that failure to disclose to the patient medically contraindicated information would not make the information unavailable to the patient at the fair hearing. Appellants wish to "emphasize ( ) that the information withheld from the patient himself will be disclosed to the patient's representative or relative." But, as appellees point out, a substantial proportion of health care facility patients may not have a representative or relative sufficiently concerned about their well-being to seek out and present at the fair hearing the withheld information. The appropriate position lies in between: if the state or local agency will guarantee that it will provide representation to the patient from whom it seeks to withhold medically contraindicated information and that it will disclose to the representative this information, then the information may be withheld from the patient. Absent such a guarantee the preliminary injunction must be upheld. Appellants may, of course, apply to the district court to modify the injunction when they are ready, willing, and able to provide the required representation.
 
 
 9
 Judgment affirmed.
 
 
 10
 LUMBARD, Circuit Judge (concurring in part and dissenting in part):
 
 
 11
 I dissent from so much of Judge Oakes' opinion as requires the continued maintenance of the dual system of notification which the state officials in charge have found to be "cumbersome to administer, inefficient, and confusing to the patient." I would hold that the appellants' decision to implement a single notification system in place of the older dual notification system is within the realm of discretion allowed to them by the relevant regulations.
 
 
 12
 The majority, however, has concluded that "regardless of how we may feel about seemingly unnecessary bureaucratic red tape, the HEW regulations clearly require the state or local agency to provide the notice of transfer or reduction or termination of benefits, 45 C.F.R. § 205.10(a)(4)(i), and further seem to preclude delegation of the responsibility. Id. § 205.100(b)(1)."
 
 
 13
 Although the majority has not thought it necessary to quote from the regulations themselves, an examination of their text will indicate why my reading of these regulations differs so markedly from their reading.
 
 45 C.F.R. § 205.10(a)(4)(i) provides that:
 
 14
 A State (Medicaid) plan shall provide for a system of hearings under which . . . . The single State agency responsible for the program shall be responsible for fulfillment of hearing provisions. . . . In cases of intended action to discontinue, terminate, suspend, or reduce assistance . . . the State or local agency shall give timely and adequate notice. . . .
 
 45 C.F.R. § 205.100(b) provides that:
 
 15
 The State agency will not delegate to other than its own officials its authority for exercising administrative discretion in the administration or supervision of the plan including the issuance of policies, rules, and regulations on program matters. . . . In the event that any services are performed for the single State agency by other State or local agencies, such agencies and offices must not have authority to review, change, or disapprove any administrative decision of the single State agency, or otherwise substitute their judgment for that of the agency as to the application of policies, rules, and regulations promulgated by the State agency.
 
 
 16
 Read in their entirety, these provisions of the C.F.R. carry a plain meaning. § 205.10(a)(4)(i) simply provides that the state agency is ultimately "responsible" for giving "timely and adequate notice. . . ." If this choice of words carries an implicit prohibition against delegation of duties even where the state agency retains ultimate responsibility to ensure that those duties are carried out properly, I fail to see it. In any event, § 205.100(b) clearly provides for the delegation of all duties imposed under the plan except for those functions which necessarily involve "discretion" or "supervision" such as would be involved in the "issuance of policies, rules, and regulations on program matters. . . ." The regulation explicitly permits the delegation of agency functions to other State or local agencies and offices, such as the Utilization Review Committee (URC), provided that these delegates have no authority to "review, change, or disapprove" decisions as to the application of the rules and regulations and as to the determination of policy decisions generally. The delegates cannot "substitute their judgment" for the judgment of those responsible for running the program. Thus the regulations make the familiar distinction between discretionary, managerial, and policy-making tasks, which clearly cannot be delegated, and ministerial tasks, involving little or no exercise of discretionary judgment, which just as clearly can be delegated.
 
 
 17
 The issue before the court is whether the URC or the state agency will send a printed form to the Medicaid recipient advising him of his due process rights. Since the form must be sent whenever there is a reduction or termination of benefits, there is no discretionary or policy-making judgment involved in deciding when to send the form. And since all that is required is to place the form in an envelope and mail it, no discretionary or policy-making judgment is required in deciding how to send the form. Indeed, sending out these printed forms appears to be one of the most paradigmatically ministerial and therefore delegable tasks imaginable. If mailing forms cannot be delegated, I am hard put to think of what can be. Yet the reasoning of the majority opinion might be read to suggest that not only the placing of the forms in the envelopes must be carried out by agency officials, but that these officials must hand deliver each notice in person, rather than delegating the purely ministerial task of delivery to the United States Post Office.
 
 
 18
 That appellants have not, as the majority notes, cited any "authority for allowing a private party such as the health care facility to provide the notice required by due process before the State can reduce public assistance benefits" cannot require a different result. First, the absence of authority, to the degree it exists, springs from the utter futility of challenging delegation of such a purely ministerial function. Second, the URC, which the state officials would like to entrust with the ministerial task of providing notice, is not a "private party (like) the health care facility," but rather, a public agency, whose establishment is required as a condition of participation in the Medicaid program, and which is given discretionary as well as notice responsibilities of its own. See 42 C.F.R. § 450.19(a)(3)(ix)(F). To prohibit a public agency with discretionary and managerial responsibilities from carrying out ministerial tasks at the direction of the state agency of which it is a part would be anomalous indeed. The plain meaning of the regulations cannot support such a result.
 
 
 19
 Moving beyond the regulations, I believe that there are other equally important reasons for reversing the district court's requirement that the dual notification system be maintained. First, the district court did not give sufficient deference to the determination of the state agencies that the dual notification system was "cumbersome to administer, inefficient and confusing to the patient," and that the single notification system, by contrast, "would benefit the patient and help streamline the complex network of Medicaid regulations." In addition to saving the extra expense of a duplicative system, the single notification system works to the patient's advantage by advising him simultaneously of both the URC decision and of his right to challenge that decision. Although some patients will not receive notice under either system so long as it is administered by fallible human beings, that is no reason for preferring the judgment of the district court to the judgment of state officials who are entrusted with running these programs, who are intimately acquainted with the problems involved, and whose duty and interest is to see the program run smoothly. Where, as here, such officials make changes in the program within the realm of the discretion permitted to them under the regulations their decisions are entitled to considerable deference by the federal judiciary.
 
 
 20
 Second, I believe that private plaintiffs who have not exhausted their administrative remedies bear an especially heavy burden in seeking to have a federal court upset a carefully considered state agency decision, particularly when they cannot refer to even one regulation prohibiting that decision. The federal courts are not ombudsmen. Plaintiffs should have brought their complaint in the first instance to HEW which is charged with administering the Medicaid program and which presumably has more expertise in this area than federal judges. Indeed, plaintiffs have not even bothered to find out what HEW's position on this matter is. Certainly we should be aware of HEW's position before we hazard a decision which may interfere with a complicated regulatory scheme. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). If HEW is not satisfied with the manner in which the state is carrying out the program, it has the duty and the authority to take the necessary action.
 
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 Yaretsky v. Blum, No. 76 Civ. 3360 (CBM) (S.D.N.Y. Jan. 10, 1978)
 
 
 [2]
 45 C.F.R. § 205.10(a)(4)(i) provides that "the State or local agency shall give timely and adequate notice" in cases of proposed actions to reduce or terminate assistance. It does not permit notice to be given by a private party or "the Utilization Review Committee" of a private party
 
 
 [3]
 45 C.F.R. § 205.100(b)(1) permits delegation "by other State or local agencies" but in no case permits delegation to a private party such as a health care facility or its "Utilization Review Committee." The dissenting opinion appears to equate such a committee with a state or local agency, a characterization with which we disagree; and we note that appellants make the further argument that Either the Utilization Review Committee Or the private health care facility itself should be allowed to provide the patient with notice of the reduction or termination of his Medicaid benefits and his fair hearing rights to challenge this determination
 
 
 [4]
 In support of the suggested preference for the judgment of the state officials over that of the district court, the dissenting opinion states that "some patients will not receive notice under either system so long as it is administered by fallible human beings." However, the undisputed evidence is that none of the ten intervenor-appellants received Any written notice whatsoever; the "notice" given to them was either a verbal notice to the patient, written or verbal notice to the patient's relative, or a combination of the two; and the "notice" was brief and conclusory, stating only that the patient would be transferred and that the patient could seek a fair hearing. Thus even if the notice procedure in this case had been proper, it was woefully inadequate. In addition, the burden, it seems to us, is on the State to persuade HEW to amend its regulations, not on private plaintiffs first to complain to HEW