9 F.3d 1049
 17 Employee Benefits Cas. 2010
 IUE AFL-CIO PENSION FUND; Lloyd J. Hayes; Peter S.
DiCicco; Sal T. Ingrassia; John S. Vozella; Clarence
Ranallo; Thomas F. Lynch, as Trustees of the IUE AFL-CIO
Pension Fund, Plaintiffs-Appellants,
v.
Thomas HERRMANN; Locke Mowers, Incorporated, Defendants-Appellees.
 No. 360, Docket 93-7384.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 13, 1993.
Decided Nov. 19, 1993.
 
 Thomas M. Kennedy, New York City (Ira Cure, Lewis, Greenwald, Kennedy, Clifton & Schwartz, P.C.; Jonathan Gould, Gould, Livingston, Adler & Pulda, Hartford, CT, of counsel), for plaintiffs-appellants.
 William J. Wenzel, Bridgeport, CT (Alice Ann Carey and Pullman & Comley, of counsel), for defendant-appellee Thomas Herrmann.
 Alan M. Wolper, Atlanta, GA (Hunton & Williams, William Narwold, David D. Legere, Cummings & Lockwood, Hartford, CT, of counsel), for defendant-appellee Locke Mowers, Inc.
 Before: OAKES, Senior Circuit Judge, MAHONEY, Circuit Judge, and MISHLER, Senior District Judge.*
 OAKES, Senior Circuit Judge:
 
 
 1
 Plaintiff/Appellant, IUE AFL-CIO Pension Fund, a multi-employer, union pension fund, and its trustees (collectively the "Fund") appeal an unpublished order of the United States District Court for the District of Connecticut, T.F. Gilroy Daly, Judge, adopting Magistrate Judge Arthur H. Latimer's report and recommendation to dismiss the Fund's second amended complaint ("SAC" or the "Complaint") for failure to plead fraud with particularity, lack of federal jurisdiction, and for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 9(b), 12(b)(1), and (6).[1] Given the procedural context of this case, we are required to address several distinct jurisdictional questions--whether the Fund timely filed objections to the magistrate judge's report and recommendation, whether a final judgment is before this court, whether the district court properly dismissed the Fund's federal claims pursuant to Rules 9(b) and 12(b), and whether the district court had pendent[2] jurisdiction over the state law claims. We are also asked to rule on the Fund's request for injunctive relief pursuant to 29 U.S.C. Sec. 1399(c) (1988). We conclude that timely objections to the magistrate judge's report and recommendation were filed, there is a final judgment before this court, and the district court had jurisdiction over the federal claims and pendent jurisdiction over the state law claims. We therefore reverse the district court's dismissal of the Complaint, affirm the district court's denial of the Fund's request for injunctive relief, and remand for further proceedings.
 
 I.
 Standard of Review
 
 2
 When an appeal comes before this Court on a motion to dismiss, we accept as true the factual allegations of the Complaint. See, e.g., Square D Co. v. Niagara Frontier Tariff Bureau Inc., 476 U.S. 409, 411, 106 S.Ct. 1922, 1923, 90 L.Ed.2d 413 (1986); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957); Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1098 (2d Cir.1988), cert. denied, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). In considering such motions, we must read the Complaint liberally, drawing all inferences in favor of the pleader. See, e.g., Scheuer, 416 U.S. at 236, 94 S.Ct. at 1686; Conley, 355 U.S. at 45-46, 78 S.Ct. at 101-102; Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir.1989). Moreover, "[t]he district court should deny the motion [to dismiss] unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief." Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir.1984). This general rule applies even when fraud is pleaded. Ross v. Bolton, 904 F.2d 819, 823 (2d Cir.1990) ("[w]hen a fraud is asserted, the general rule is simply applied in light of Rule 9(b)'s particularity requirements.").
 
 II.
 Factual Allegations
 
 3
 Taking as true the factual allegations specified in the Complaint, the Fund seeks recovery of major Fund debts and obligations owed to it by co-Defendants/Appellees, Locke Manufacturing, Inc. ("Manufacturing"), Thomas Herrmann, and Locke Mowers, Inc. ("Mowers"). Herrmann has been the president and sole shareholder of Manufacturing since 1986 when he purchased all of its stock pursuant to a Stock Purchase Agreement dated October 1, 1986, an agreement "binding upon and inur[ing] to the benefit of the parties hereto and their successors and assigns." See SAC, Exhibit C, Stock Purchase Agreement Among Tippecanoe Management Corp., Michael A. Goodman and Thomas A. Herrmann, dated as of October 1, 1986, Sec. 10.7. Pursuant to a collective agreement, Manufacturing was obliged, but failed, to make contributions to the Fund. At such time, Herrmann was "fully aware of an unfunded accrued liability with respect to the IUE AFL-CIO Pension Plan." Id. at Sec. 3.12(g). "The total estimated amount of unfunded pension liability due to the pension fund at [sic] July 31, 1986 was $476,955." See SAC, Exhibit B at 7.
 
 
 4
 On November 10, 1988, Mowers, through its corporate parent Elswick, PLC, offered to acquire the business and certain assets of Manufacturing for a stated consideration of $400,000. See SAC, Exhibit D. On April 10, 1989, Mowers, Manufacturing and Herrmann entered into the acquisition agreement pursuant to which Mowers purchased Manufacturing's assets, but did not assume liability "actual or contingent, whatsoever, including, without limitation, for any withdrawal liability of Seller under any multiemployer pension plan." See SAC, Exhibit E at 5. Moreover, the Fund alleges that the parties dropped the purchase price to $350,000 and gave Herrmann a $50,000 signing bonus instead. It is also alleged that Herrmann received a one year service arrangement for $75,000 and over $370,000 payable over three years for a covenant not to compete. Prior to the asset sale, Herrmann used a Manufacturing line of credit to pay himself an extra bonus of more than $250,000. These transactions allegedly rendered Manufacturing insolvent.
 
 
 5
 On May 9, 1989, Manufacturing ceased operations and effectuated a complete withdrawal from the Fund. On October 27, 1989, the Fund sent a written demand to Manufacturing for payment of withdrawal liability amounting to $638,098.
 
 III.
 Dismissal of the Complaint
 
 6
 Herrmann and Mowers moved to dismiss the Complaint. Reading the Complaint liberally, the Complaint states (1) a federal claim as against all defendants under ERISA's Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. Secs. 1381, 1383, 1391 (1988), which imposes "withdrawal liability" when an "employer," in going out of business, effectively "withdraws from a multiemployer plan" like the Fund, see SAC claims 1, 4; and (2) a federal claim as against all defendants under 29 U.S.C. Secs. 1451(a)(1), 1392(c) (1988), which imposes liability on any party who has attempted to "evade or avoid liability" under the MPPAA and whose acts have "adversely affected" a pension fund, see SAC, claims 1, 4 and 5. The Complaint also states (1) a Delaware state law illegal distribution fraud claim against Herrmann, see SAC, claim 2, (2) a Connecticut state fraudulent conveyance claim, see SAC, claim 3 and (3) a Connecticut state law claim for failure to comply with Article 6 of Connecticut's U.C.C., Bulk Transfer Act, Conn.Gen.Stat. Sec. 42a-6-101 et seq., which imposes liability on debtors who fail to give notice to creditors upon a bulk sale of the debtor's assets and, in some instances, ensures that the money paid to the indebted seller is applied to pay the seller's debts, see SAC, claims 6 and 7. These state law claims all derive from the same circumstances that gave rise to the federal claims. In support of all their claims, the Fund attached eight exhibits elaborating the factual allegations of the Complaint.
 
 
 7
 The magistrate judge recommended dismissal of the Complaint for a variety of reasons. According to the magistrate judge's report: (1) neither Mowers nor Herrmann can be construed to be an employer under the MPPAA; (2) fraud allegations were not pleaded with particularity; (3) the Fund mistakenly invoked the court's diversity jurisdiction for a number of the state law claims;[3] (4) with the dismissal of the federal law claims, discretionary pendent jurisdiction should not be exercised; (5) even if a federal claim is recognized, the pendent state law claims should be dismissed because they are disproportionate in number; and (6) the request for interim quarterly payments of the withdrawal liability is a unique request for which there is no statutory authority.
 
 
 8
 On appeal, the defendants question the timeliness of the appeal and this court's appellate jurisdiction.
 
 IV.
 Timeliness of Appeal
 
 9
 Herrmann argues that the Fund's objection to the magistrate judge's report and recommendation was not timely and therefore must not be considered. See Wesolek v. Canadair Ltd., 838 F.2d 55, 58 (2d Cir.1988) (citing McCarthy v. Manson, 714 F.2d 234, 237 & n. 2 (2d Cir.1983); John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 588 F.2d 24, 29-30 (2d Cir.1978), cert. denied, 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979)).
 
 
 10
 A party may request a judge to reconsider a magistrate judge's report and recommendation within ten days of being served with a copy of the order. 28 U.S.C. Sec. 636(b)(1) (1988). A failure to file timely objections to a magistrate judge's report and recommendation may be fatal. See Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985) (court of appeals may deny review to a petitioner who "was notified in unambiguous terms of the consequences of a failure to file, and deliberately failed to file nevertheless"); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.) (holding that petitioner's failure to file timely objections to magistrate judge's report and recommendation barred further judicial review and no circumstances warranted excusing the default in the interests of justice), cert. denied, --- U.S. ----, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); Small v. Sec'y of Health & Human Serv., 892 F.2d 15, 16 (2d Cir.1989) (per curiam) (confirming previously stated rule that "failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision," although holding that this rule does not apply to pro se parties unless the "magistrate's report explicitly states that failure to object to the report within ten (10) days will preclude appellate review and specifically cites 28 U.S.C. Sec. 636(b)(1) and [Fed.R.Civ.P.] 72, 6(a) and 6(e)").
 
 
 11
 Applying the normal rules guiding the timeliness of appeals, the Fund had 10 days to file and serve objections after the magistrate judge's order was entered (December 10, 1992). Day 1 was the day after entry or December 11. Because the time period involved is less than 11 days, intermediate Saturdays, Sundays and legal holidays do not count. Fed.R.Civ.P. 6(a). Finally, Fed.R.Civ.P. 6(e) provides for an additional three days where service is by mail, as is the case here. See, e.g., Nalty v. Nalty Tree Farm, 654 F.Supp. 1315, 1317-18 (S.D.Ala.1987) (applying above analysis).
 
 
 12
 A simple glance at a December 1992 calendar confirms that the Fund had until December 30, 1992 to file objections. The Fund filed objections on December 28. Thus, the Fund made timely objections to the magistrate judge's report and recommendation.
 
 V.
 Appellate Jurisdiction
 
 13
 Herrmann argues that this court lacks appellate jurisdiction because the Fund filed a notice of appeal before a final decision of the district court had been rendered. 28 U.S.C. Sec. 1291 (1988). However, "a premature notice of appeal from a nonfinal order may ripen into a valid notice of appeal if a final judgment has been entered by the time the appeal is heard and the appellee suffers no prejudice." Welch v. Cadre Capital, 923 F.2d 989, 992 & n. 1 (2d Cir.) (citations omitted) (noting Yaretsky v. Blum, 592 F.2d 65, 66 (2d Cir.1979) ("the better rule is that in the absence of prejudice to the appellee, the court should treat a premature appeal as from a final judgment so as to avoid denial of justice, expense, and inconvenience.")), vacated on other grounds and remanded sub nom. Northwest Sav. Bank v. Welch, --- U.S. ----, 111 S.Ct. 2882, 115 L.Ed.2d 1048 vacated, 946 F.2d 185 (2d Cir.1991).[4]
 
 
 14
 On March 30, 1993, the district court entered an order affirming, approving, and adopting the magistrate judge's report and recommendation of December 7, 1992. On April 8, 1993, the Fund appealed to the Second Circuit. On June 2, 1993, the Fund voluntarily dismissed its cause of action against Manufacturing without prejudice pursuant to Fed.R.Civ.P. 41(a)(1)(i). The Fund did not renew its appeal to the Second Circuit after this time.
 
 
 15
 Under the circumstances surrounding this appeal, the Fund has filed a premature notice of appeal from a nonfinal order which has now ripened into a valid notice of appeal. Therefore, the notice of appeal, as well as appellate jurisdiction, is valid.[5]
 
 VI.
 Federal Jurisdiction Under Rule 12(b)
 
 16
 Having determined that we have appellate jurisdiction to review the Fund's appeal, we must determine (1) whether the district court had subject matter jurisdiction over the federal claims, Fed.R.Civ.P. 12(b)(1); (2) whether the district court had personal jurisdiction over the defendants, Fed.R.Civ.P. 12(b)(2); and (3) whether the liberally construed allegations made in the Complaint set forth a federal claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).
 
 A. Subject Matter Jurisdiction
 
 17
 "In determining whether the federal courts have subject matter jurisdiction over a cause of action, a district court must look to the way the complaint is drawn to see if it claims a right to recover under the laws of the United States." Goldman v. Gallant Sec., Inc., 878 F.2d 71, 73 (2d Cir.1989) (per curiam) (citing Bell v. Hood, 327 U.S. 678, 681, 66 S.Ct. 773, 775, 90 L.Ed. 939 (1946)). "Dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.' " Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1280 (3d Cir.1993) (quoting Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666, 94 S.Ct. 772, 776, 39 L.Ed.2d 73 (1974)) (internal quotations and other citations omitted); cf. Van Gemert v. Boeing Co., 520 F.2d 1373, 1380 (2d Cir.) (violation of stock exchange rule gave rise to colorable claim under securities laws so as to sustain federal jurisdiction), cert. denied, 423 U.S. 947, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975).
 
 
 18
 The question thus posed is whether the federal MPPAA claim was so insubstantial, implausible, or otherwise completely devoid of merit as not to involve a federal controversy. This is a high burden for the defendants to meet. Under such an analysis, a colorable federal claim has been stated in this case. 29 U.S.C. Sec. 1451(a)(1) (1988) provides (emphasis added):
 
 
 19
 A plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan, or an employee organization which represents such a plan participant or beneficiary for purposes of collective bargaining, may bring an action for appropriate legal or equitable relief, or both.
 
 
 20
 Thus, the federal courts have subject matter jurisdiction over "any party under this subtitle" if that party's act or omission adversely affects, among others, any plan participant.
 
 
 21
 In this case, the Fund, a plan participant, has been adversely affected by the acts of Manufacturing, Mowers and Herrmann. By their actions, as alleged in the liberally-construed Fifth claim of the Complaint (which incorporates by reference the facts alleged in the previous paragraphs), Manufacturing, Mowers and Herrmann participated in a scheme, the principal purpose of which was to evade or avoid withdrawal liability by depriving Manufacturing of funds sufficient to meet its pension liability. See SAC, claims 1, 2, 5 and attached exhibits. Section 1392(c) of Title 29 (1988), entitled, "Transactions to evade or avoid liability," provides (emphasis added):
 
 
 22
 If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected ) without regard to such transaction.
 
 
 23
 Reading sections 1451(a)(1) and 1392(c) together, if a pension fund (such as the Fund in this case) is adversely affected by the acts of any party who has attempted to "evade or avoid liability" under the MPPAA (such as Manufacturing, Mowers or Herrmann), then the MPPAA shall be applied "without regard to such transaction." To calculate and collect liability, "without regard to such transaction," any assets that were transferred in order to "evade or avoid liability," as well as the parties to whom they were improperly transferred, must be within the reach of the statute. Further, to apply the MPPAA "without regard to such transaction," the transferor entity must be deemed to be in possession of improperly transferred assets. Those assets must therefore be recoverable from the parties to whom they have been illegitimately transferred. Those parties thus become "part[ies] under this subtitle" within the meaning of Sec. 1451(a)(1). Cf. Stotter Div. of Graduate Plastics Co., Inc. v. District 65, United Auto Workers, AFL-CIO, 991 F.2d 997, 1002-03 (2d Cir.1993) (upholding an arbitrator's finding that an asset purchaser may be liable for non-ERISA fund contributions as a "successor" even though a corporation that merely purchases another corporation's assets for cash does not normally assume the seller corporation's liabilities).
 
 B. Personal Jurisdiction
 
 24
 Having stated a colorable claim against defendants under the MPPAA, the district court has personal jurisdiction over the defendants insofar as the MPPAA includes a provision for nationwide service of process. See 29 U.S.C. Sec. 1451(d) (1988). Moreover, under the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process, and the federal and state claims "derive from a common nucleus of operative fact", see United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available. See, e.g., Hargrave v. Oki Nursery, Inc., 646 F.2d 716, 719 (2d Cir.1980) ("by giving jurisdiction over an 'action' to enforce a federal right Congress granted the district courts power also to consider state law claims provided they had a nucleus of pertinent facts in common with a substantial federal claim"); International Controls Corp. v. Vesco, 593 F.2d 166, 175 (2d Cir.) (authorizing pendent personal jurisdiction over related state law claims where federal statute invoked is Section 27 of the Securities and Exchange Act of 1934) (citing Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326 (2d Cir.1972)), cert. denied, 442 U.S. 941, 99 S.Ct. 2884, 61 L.Ed.2d 311 (1979); Oetiker v. Jurid Werke, G.m.b.H., 556 F.2d 1, 4-5 (D.C.Cir.1977) (authorizing pendent personal jurisdiction over related state law claims under federal patent statute); Robinson v. Penn Central Co., 484 F.2d 553, 555-56 (3d Cir.1973) (Securities and Exchange Act); Travis v. Anthes Imperial Ltd., 473 F.2d 515, 528 (8th Cir.1973) (same); Schwartz v. Eaton, 264 F.2d 195, 197-98 (2d Cir.1959) (Investment Company Act of 1940); Mills, Pendent Jurisdiction and Extraterritorial Service Under the Federal Securities Laws, 70 Colum.L.Rev. 423 (1970); 2 Moore's Federal Practice, p 4.42, at 4-524, n. 47 (1978); 4A C. Wright & A. Miller, Federal Practice and Procedure, Sec. 1125, at 326 (1987 & Supp.1993). We need not reach the question whether personal jurisdiction as to the state law claims was otherwise available because the district court had personal jurisdiction over the defendants under the MPPAA and the state law claims derive from a common nucleus of operative facts with the federal claims. Accordingly, there is jurisdiction over both the federal and state claims as stated in the Complaint.
 
 C. Legal Sufficiency of the Claims
 
 25
 In part VI.A. of this opinion, we decided that, for purposes of Rule 12(b)(1), the Fund has asserted a colorable federal claim. However, we have not yet decided whether any of the federal claims asserted sets forth a federal claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Our inquiry would be over if none of the claims alleged in the Complaint were fraud claims because each claim is legally sufficient to state a claim upon which relief can be granted pursuant to the liberal standard set forth under Fed.R.Civ.P. 8(a) ("short and plain statement of the claim showing that the pleader is entitled to relief"). See Ross v. Bolton, 904 F.2d 819, 823 (2d Cir.1990). However, Rule 9(b) requires that the pleader of a fraud claim "state[ ]" "the circumstances constituting fraud ... with particularity." Fed.R.Civ.P. 9(b). This Court has construed Rule 9(b) to require a complaint alleging fraud to "allege the time, place, speaker and sometimes even the content of the alleged misrepresentation." Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir.1990) (citations omitted). "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). Thus, "scienter need not be alleged with great specificity." Ouaknine, 897 F.2d at 79-80 (citing Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir.1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); Connecticut Nat'l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir.1987); Goldman v. Belden, 754 F.2d 1059, 1071-72 (2d Cir.1985)). In fact, conclusory allegations of scienter are sufficient "if supported by facts giving rise to a 'strong inference' of fraudulent intent." Ouaknine, 897 F.2d at 80; Beck, 820 F.2d at 50; Connecticut Nat'l Bank, 808 F.2d at 962.
 
 
 26
 The specificity required by Rule 9(b) is distinct from Rule 8(a)'s liberal "plain statement" rule. This distinction serves several purposes: (1) "to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based," Ross v. Bolton, 904 F.2d 819, 823 (2d Cir.1990) (citations omitted); see also O'Brien v. National Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir.1991); (2) "[to] safeguard[ ] defendant's reputation and goodwill from improvident charges of wrongdoing," Ross v. Bolton, 904 F.2d at 823 (citations omitted); see also O'Brien, 936 F.2d at 676; and (3) "to inhibit the institution of strike suits." Ross v. Bolton, 904 F.2d at 823 (citations omitted). Nevertheless, Rule 9(b) "must be read together with rule 8(a)." Ouaknine, 897 F.2d at 79 (citations omitted); 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1298, at 617 (1969 & Supp.1989).
 
 
 27
 Moreover, "[d]espite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir.1990) (citations omitted).
 
 
 28
 The magistrate judge incorrectly dismissed the Complaint under the Rule 9(b) standard of specificity. Applying the general rule this Court invokes when an appeal comes before us on a motion to dismiss, accepting as true the factual allegations in the liberally construed Complaint, and drawing all inferences in favor of the pleader, see Ross v. Bolton, 904 F.2d at 823, we hold that the fraud claims alleged in the Complaint are legally sufficient to survive the specificity requirements of Rule 9(b) and a Rule 12(b)(6) motion to dismiss. Everything necessary to ascertain a federal claim under the MPPAA is in the Complaint and its attached exhibits.
 
 
 29
 To support its claim that Manufacturing, Mowers and Herrmann structured the asset sale to "evade and avoid" withdrawal liability under the MPPAA, the Fund attaches the documents that structured the asset sale. For example, the Fund, in alleging that Herrmann knew about the withdrawal liability, quotes from the Stock Purchase Agreement and includes as exhibits both the Stock Purchase Agreement and associated financial statements. The Fund then alleges how Herrmann and Mowers conspired to avoid withdrawal liability by quoting from specific passages in the Asset Sale Agreement whereby Mowers could purchase the entire company except for certain liabilities including the withdrawal liability. Moreover, the Fund alleges intent and supports it with quoted passages from signed contracts attached as exhibits. These allegations raise the strong inference that this transaction was not the typical asset sale but one structured to circumvent the mandates of a federal statute and to defraud a pension fund.
 
 
 30
 Moreover, the Fund was wholly dependent on the defendants' representations to make out its case of fraud. As the Fund was not privy to the negotiation of the asset sale, a more particularized account of the fraud claims could only be established through discovery.
 
 
 31
 A thorough reading of the Complaint puts the defendant on fair notice both as to the claims and the factual ground upon which the claims are based. Given the standard of review, drawing all inferences in favor of the Fund, we cannot state that it appears to a certainty that the Fund can prove no set of facts entitling it to relief.
 
 
 32
 To summarize, the Fund has stated a colorable federal claim upon which relief can be granted because (1) the Fund has alleged that Mowers, Manufacturing, and Herrmann structured the asset sale so as to avoid withdrawal liability under the MPPAA and (2) taking the Fund's allegations in the Complaint as true, there is a federal basis upon which the court may grant relief to the Fund. Having so alleged this harm and having stated such claims, the district court has federal question jurisdiction over such claims upon which relief can be granted and personal jurisdiction over the parties for purposes of the federal and the state claims. Fed.R.Civ.P. 9(b), 12(b)(1), (2) and (6). In concluding that there is a viable federal claim, we need not reach the question whether Mowers or Herrmann are "employers" within the meaning of section 1381.
 
 VII.
 Federal Jurisdiction of State Law Claims
 
 33
 Several of the claims are based on state law. Once a federal court has federal jurisdiction, it can normally exercise pendent jurisdiction over the state law claims. See, e.g., United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (federal court has pendent jurisdiction over state law claims so long as the relationship between the federal and state claims "permits the conclusion that the entire action before the court comprises but one constitutional 'case.' "). See also Rosado v. Wyman, 397 U.S. 397, 404, 90 S.Ct. 1207, 1213, 25 L.Ed.2d 442 (1970); see also Cushing v. Moore, 970 F.2d 1103, 1106 (2d Cir.1992) (using the same analysis but for supplementary jurisdiction under 28 U.S.C. Sec. 1367 (Supp.1990)). Furthermore, this Circuit has held that once a claim is sufficient for federal jurisdictional purposes, the state law claims also may be considered. See, e.g., Flickinger v. Harold C. Brown & Co., Inc., 947 F.2d 595, 598 (2d Cir.1991).
 
 
 34
 The Supreme Court continually has stated that a federal court lacks jurisdiction to resolve pendent state claims only when the federal question is " 'so insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits.' " Hagans v. Lavine, 415 U.S. 528, 548, 94 S.Ct. 1372, 1384, 39 L.Ed.2d 577 (1974) (quoting Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666-67, 94 S.Ct. 772, 776-77, 39 L.Ed.2d 73 (1974)). However, the judicial power of pendent jurisdiction "need not be exercised in every case in which it is to be found to exist.... pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants." United Mine Workers v. Gibbs, 383 U.S. at 726, 86 S.Ct. at 1138; see also Castellano v. Board of Trustees of Police Officers' Variable Supplements Fund, 937 F.2d 752, 758 (2d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991).
 
 
 35
 In this case, the federal and state law claims derive from a common nucleus of operative fact. See Gibbs, 383 U.S. at 725. All the claims derive from the transaction between Manufacturing, Mowers, and Herrmann (the asset sale purchase), events leading up to this transaction, and events following this transaction. In each instance, these events allegedly tell the story of how the defendants conspired to defraud the pension fund either under the MPPAA or under state law. Therefore, in the interest of justice and judicial economy, the district court should have exercised pendent jurisdiction over the state law claims.
 
 VIII.
 Injunctive Relief
 
 36
 The Fund asks us to reconsider its motion to compel quarterly withdrawal liability payments pursuant to 29 U.S.C. Sec. 1399(c) (emphasis added) which expressly states that "an employer shall pay the amount determined under Section 1391 of this title...." However, before a court may compel an employer to make interim payments under Section 1399(c), the plaintiff must comply with the statutory notice and demand requirements under Section 1399(b)(1)(A). This gives the employer an opportunity to object to the calculation of interim payments and to furnish additional relevant information. 29 U.S.C. Sec. 1399(b)(2)(A) (1988).
 
 
 37
 The Fund complied with the statutory notice and demand requirements only with respect to Manufacturing and not with respect to Mowers and Herrmann. See SAC, p 17 and Exhibit A. Thus, neither Mowers nor Herrmann was provided with the opportunity to contest the calculation of the withdrawal liability or to have the dispute arbitrated.
 
 
 38
 More importantly, by the plain language of the statute, only employers are liable for interim payments. However, it has yet to be determined that the defendants were "employers" within the meaning of the MPPAA. This is not a dispute in which an employer admits its obligation to pay withdrawal liability but contests the pension fund's calculations. Rather, the defendants contest the underlying basis for the Fund's attempt to collect withdrawal liability. Under the circumstances, we believe it would be unfair to burden the defendants with an order compelling payment where defendants were not given the opportunity to object to the calculations and especially where the defendants may not be liable at all.
 
 IX.
 Conclusion
 
 39
 For the foregoing reasons, we affirm the denial of the Fund's motion to compel defendants to make interim payments pursuant to 29 U.S.C. Sec. 1399(c), but otherwise reverse the judgment and remand to the district court for further proceedings in accordance with this opinion.
 
 
 
 *
 The Honorable Jacob Mishler, Senior District Judge, Eastern District of New York, sitting by designation
 
 
 [1]
 The defendants also have asserted that the court lacked personal jurisdiction under Fed.R.Civ.P. 12(b)(2). It is unclear from the magistrate judge's report and recommendation whether the complaint was dismissed for lack of personal jurisdiction as well
 
 
 [2]
 Supplemental jurisdiction, 28 U.S.C. Sec. 1367(a) (Supp. II 1990), which codifies the common law doctrine of pendent jurisdiction, does not apply in this case because Section 1367(a) "shall apply to civil actions commenced on or after [Dec. 1, 1990]." Pub.L. No. 101-650 Sec. 310(c), 104 Stat. 5114 (1990). Although the Fund filed the SAC on December 27, 1990, after the effective date of section 1367, the Fund filed the original complaint on February 7, 1990, prior to the effective date. "An amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2). In this case, the SAC is merely an "elaboration of plaintiffs' pleadings." See District Court's endorsement of the Fund's Motion to Permit Plaintiffs to File and Serve SAC. Therefore, the December 27, 1990 filing date of the SAC relates back to the February 7, 1990 filing date of the original complaint. Consequently, we rely on the doctrine of pendent jurisdiction as articulated in United Mine Workers of America v. Gibbs, 383 U.S. 715, 725-727, 86 S.Ct. 1130, 1138-1139, 16 L.Ed.2d 218 (1966), and its progeny. In any event, an analysis under section 1367(a) would not alter our analysis
 
 
 [3]
 All parties now concede that there is no diversity jurisdiction
 
 
 [4]
 This Court in Welch noted that although "the holding in Yaretsky has been superseded by Fed.R.App.P. 4(a)(4) as the Supreme Court subsequently noted" [citing Griggs ], "the philosophy of Yaretsky, tolerating a premature notice of appeal, remains valid so long as the notice is not nullified under Fed.R.App.P. 4(a)(4)." Welch, 923 F.2d at 992 n. 1
 
 
 [5]
 Herrmann argues that the Fund's premature notice of appeal renders it without effect. See Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982) (per curiam) (holding that a notice of appeal filed before the disposition of a Rule 59 motion to alter or amend a judgment shall not have effect). Griggs does not apply to this case, however, because Griggs involves an interpretation of Fed.R.App.P. 4(a)(4) pursuant to which "[a] notice of appeal filed before the disposition of [a Rule 59 motion] shall have no effect." This rule is an exception to the more general rule that "a notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof." Fed.R.App.P. 4(a)(2). Rule 4(a)(2) is inapplicable as well because there is not, in this case, a notice of appeal that followed an announced decision that it subsequently entered. Instead, we have a notice of appeal that followed entry of the judgment dismissing the Complaint (but not as to all parties)