Filed:  May 27, 2010

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 09-1776
(3:08-cv-00340-HEH)

---

TEAMSTERS JOINT COUNCIL NO. 83 OF THE VIRGINIA PENSION
FUND; W. ROBERT DAVIDSON, Trustee of the Fund; ANTHONY
NATIONS, Trustee of the Fund; LINDSAY MARSHALL, Trustee of
the Fund; JOSEPH AYERS, Trustee of the Fund; MICHAEL
HUGHES, Trustee of the Fund; JOHN FARRISH, Trustee of the
Fund,

        Plaintiffs – Appellants,

    and

RONALD JENKINS,

        Plaintiff,

    v.

WEIDNER REALTY ASSOCIATES; EMPIRE BEEF COMPANY,
INCORPORATED,

        Defendants – Appellees.

---

O R D E R

---

The court amends its opinion filed April 30, 2010, as
follows:

On the cover sheet caption, the party designation of
"EMPIRE BEEF COMPANY, INCORPORATED," is corrected from
"Defendant" to "Defendant – Appellee."

On page 2, attorney information section, lines 3 and 5, "for Appellee" is corrected to read "for Appellees."

For the Court – By Direction

/s/ Patricia S. Connor
Clerk

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1776**

TEAMSTERS JOINT COUNCIL NO. 83 OF THE VIRGINIA PENSION
FUND; W. ROBERT DAVIDSON, Trustee of the Fund; ANTHONY
NATIONS, Trustee of the Fund; LINDSAY MARSHALL, Trustee of
the Fund; JOSEPH AYERS, Trustee of the Fund; MICHAEL
HUGHES, Trustee of the Fund; JOHN FARRISH, Trustee of the
Fund,

             Plaintiffs – Appellants,

       and

RONALD JENKINS,

             Plaintiff,

       v.

WEIDNER REALTY ASSOCIATES; EMPIRE BEEF COMPANY,
INCORPORATED,

             Defendants – Appellees.

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.   Henry E. Hudson, District
Judge.  (3:08-cv-00340-HEH)

Argued:  March 24, 2010            Decided:  April 30, 2010

Before TRAXLER, Chief Judge, DUNCAN, Circuit Judge, and Jackson
L. KISER, Senior United States District Judge for the Western
District of Virginia, sitting by designation.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

_____

**ARGUED:** Jonathan G. Axelrod, BEINS & AXELROD, PC, Washington, D.C., for Appellants. Glenn Edward Pezzulo, CULLEY MARKS TANENBAUM & PEZZULO, LLP, Rochester, New York, for Appellees. **ON BRIEF:** Richard F. Hawkins, III, HAWKINS LAW FIRM, PC, Richmond, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The Teamsters Joint Council No. 83 of Virginia Pension Fund ("the Fund") and its trustees (collectively, "Appellants") appeal a district court order granting judgment in favor of Weidner Realty Associates ("Weidner") in Appellants' action seeking to hold Weidner and Empire Beef Co., Inc. ("Empire") jointly and severally responsible for a liability that Empire incurred by failing to meet its pension-fund obligations. Appellants also appeal a ruling by the district court that circuit precedent precluded the court from addressing whether Appellants could avoid a transfer of Empire's assets in collecting on their judgment against Empire. We affirm in part, vacate in part, and remand for further proceedings.

I.

Weidner is a general partnership that was formed in the 1930s to purchase a parcel of land in Rochester, New York. Soon after the purchase, the parcel became home to a slaughterhouse, which Empire, a New York corporation, was formed to operate. In 1993, Weidner's then-current partners, who were Empire; Empire's sole shareholder, Steven Levine ("Steven"); and Steven's father, Sidney Levine ("Sidney"), formalized their arrangement by entering into an agreement ("the Partnership Agreement").

3

In approximately 2002, Empire expanded its distribution territory south and established a terminal in Richmond, Virginia. Soon thereafter, Empire hired union drivers to distribute its product from the new terminal. In so doing, it became a party to a collective bargaining agreement that obligated Empire to make contributions to the Fund. Empire ceased its operations in Richmond in late-2005, however, incurring nearly $500,000 in liability to the Fund. Empire began to satisfy this liability in monthly installments that it paid until September 2007, when it filed a voluntary Chapter 11 bankruptcy. Then, on January 5, 2008, as the bankruptcy remained pending, Steven entered into an agreement ("the Composition Agreement") with Sidney transferring all of Empire's assets, except its receivables, to Sidney, in exchange for a release of a secured debt of approximately $1.4 million that Empire owed Sidney. The bankruptcy court subsequently dismissed Empire's bankruptcy proceeding five days later without discharging Empire's debts.

The next month, the Fund notified Weidner that it was jointly and severally liable with Empire for the assessed withdrawal liability because Weidner was a member of Empire's "control group" under the rules and regulations of the Employment Retirement Income Security Act of 1974 ("ERISA"), see 29 U.S.C.A. § 1001 et seq. (West 2008 & Supp. 2009). Appellants

4

later filed this ERISA action against Empire and Weidner seeking to recover Empire's unpaid withdrawal liability. Appellants were granted summary judgment against Empire, which had not contested its liability. Weidner, on the other hand, denied that it was jointly and severally liable, maintaining that it was not a "trade[] or business[]" and that it and Empire were not "under common control." 29 U.S.C.A. § 1301(b)(1).

Prior to trial, Appellants filed a motion in limine announcing that they would argue that they were entitled under 29 U.S.C.A. § 1392(c) to collect a judgment against Empire and to disregard the Composition Agreement (which they had come to learn about during discovery). Appellants reiterated as the bench trial began that they would be making this argument. Indeed, during the trial, both parties examined Steven regarding his motivation for entering into the Composition Agreement, a pivotal issue in Appellants' attempt to reach the assets transferred to Sidney under that agreement. And, in their post-trial brief, Appellants argued once more that the Composition Agreement should be set aside.

In the end, the district court ruled that Weidner was not jointly and severally liable for Empire's withdrawal obligations because Appellants failed to prove that Empire and Weidner were under common control. See Teamsters Joint Council No. 83 of Va. Pension Fund v. Empire Beef Co., No. 3:08CV340-HEH, 2009 WL

5

1764554 (E.D. Va. June 18, 2009). The district court declined to address the validity of the Composition Agreement, however, concluding that circuit precedent precluded the court from considering an agreement that was entered into after Empire withdrew from the Fund. See id. at *2 n.3.

## II.

Appellants first argue that the district court erred in concluding that Empire and Weidner were not under common control. We disagree.

Congress found in 1980 that the "withdrawals of contributing employers from a multiemployer pension plan frequently result in substantially increased funding obligations for employers who continue to contribute to the plan, adversely affecting the plan, its participants and beneficiaries, and labor-management relations." 29 U.S.C.A. § 1001a(a)(4)(A). To address this problem, Congress enacted the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), see 29 U.S.C.A. § 1381, et seq., which amended ERISA. See SUPERVALU, Inc. v. Board of Trs. of the Sw. Pa. and W. Md. Area Teamsters and Employers Pension Fund, 500 F.3d 334, 336-37 (3d Cir. 2007). MPPAA provides that when an employer withdraws from an ongoing multi-employer pension plan, the employer becomes liable for a proportionate share of the plan's unfunded vested liability.

6

See 29 U.S.C.A. § 1381. Under ERISA, the term "employer" includes "trades or businesses . . . which are under common control" at the time of the withdrawal, which in this case was September 30, 2005. 29 U.S.C.A. § 1301(b)(1); see Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 121 (4th Cir. 1991). Thus, to establish Weidner's liability, Appellants had to show that on that date the same five or fewer persons owned a "controlling interest" in both Weidner and Empire and that those people were in "effective control" of each organization. 26 C.F.R. § 1.414(c)-2(c) (2009). As Empire's sole shareholder, Steven clearly had a controlling interest and effective control of Empire. Consequently, the sole issue before the district court related to common control concerned whether Steven also owned a controlling interest and had effective control of Widener.

The applicable regulation defines "controlling interest" in a partnership as "ownership of at least 80 percent of the profits interest or capital interest of such partnership." 26 C.F.R. § 1.414(c)-2(b)(2)(i)(C) (2009). "Effective control" of a partnership is defined as ownership of "an aggregate of more than 50 percent of the profits interest or capital interest of such partnership." 26 C.F.R. § 1.414(c)-2(c)(2)(iii). "Capital interest in a partnership," in turn, is defined, as is relevant here, as "an interest in [the partnership's] assets that is

7

distributable to the owner of the interest" upon the partnership's liquidation. Internal Revenue Service Publication No. 541, <u>Partnerships</u> (2008).

In finding that Steven had only 50% of the capital interest in Weidner, the district court relied on Articles XII and IV of the Partnership Agreement. Article XII, entitled "Termination and Liquidation," provides that at the termination of the Partnership,

> the assets of the Partnership shall be sold and the proceeds of the sale shall be applied or distributed in the following order of priority:
>
>> (a)  To pay or provide for the payment of all liabilities of the Partnership;
>>
>> (b)  To pay all expenses of liquidation;
>>
>> (c)  To return to the Partners any credit balance in their capital accounts; and
>>
>> (d)  To the Partners <u>in proportion to their percentage interest in the Partnership</u>.

J.A. 169-70 (emphasis added). The court noted that the partners' percentage interests in the partnership were set forth in Article IV of the agreement:

> 4.1  <u>Percentage Interest in the Partnership</u>. Each of the partners shall have a percentage interest in the Partnership as follows:
>
>> | Sidney E. Levine | 50% |
>> | Steven H. Levine | 12½% |
>> | Empire Beef Co., Inc. | 37½% |

8

J.A. 164.[1]  The parties agree that Empire's ownership interest is imputed to Steven for purposes of ERISA by virtue of his ownership of Empire.  Therefore, the district court reasoned, as of September 30, 2005, Sidney and Steven each owned a 50% percentage interest in Weidner.  Because Steven did not own greater than 50% of Weidner's capital interest, he did not maintain effective control, and Weidner was not part of Empire's control group.

Appellants challenged this conclusion at trial, pointing to Article V of the Agreement, which states, in relevant part:

> 5.1 <u>Capital Accounts</u>. A separate capital account shall be maintained for each Partner.  The <u>capital interest</u> of each Partner shall consist of his capital contribution, increased by such Partner's subsequent capital contributions and such Partner's share of net Partnership profits, and decreased by distributions to such Partner by the Partnership and his share of Partnership losses.

J.A. 164 (second emphasis added).  Appellants maintained that this section essentially redefined "capital interest," superseding the definition provided in IRS Publication 541.  For

---

[1] That section also provides that

> [t]he percentage of interest of each of the Partners in the Partnership, initially as set forth above, and as the same may from time to time change by virtue of transfers of Partnership interests or otherwise, shall be referred to in this Partnership Agreement as the "percentage interest in the Partnership."

J.A. 164.

this reason, Appellants argued that it is the partners' capital accounts rather than their percentage interests that should be used to determine controlling interests and effective control. The district court rejected this argument, and we do as well.[2]

As the district court noted, Section 5.1 is titled "Capital Accounts," and nothing in the agreement gives any indication that the words "capital interest" were intended to refer to anything other than the amount of a capital account. Indeed, as we have noted, the amounts due each partner upon liquidation are handled in a completely separate section of the agreement. We therefore conclude that the district court correctly looked to Article XII rather than Article V of the agreement to determine Steven's capital interest percentage in Weidner.

---

[2] In rejecting Appellants' interpretation, the district court described the agreement's use of the words "capital interest" as a "scrivener's error." J.A. 426. Appellants take issue with that characterization, but whether that description was correct is immaterial. The critical aspect of the district court's ruling was that the parties did not intend "capital interest" in Article V to supersede the definition in IRS Publication 541, and the district court was on firm ground in drawing this conclusion.

III.

Appellants also maintain that the district court erred in declining to address the validity of the Composition Agreement. As to this issue, we agree.[3]

MPPAA provides that "[i]f a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction." 29 U.S.C.A. § 1392(c). This subsection authorizes the recovery of improperly transferred assets from the party to whom they have been illegitimately transferred. See IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056 (2d Cir. 1993).

---

[3] Initially, we note that Widener maintains that we should not address this issue because Appellants did not raise it in their pleadings. However, the parties certainly tried this issue by consent. See Fed. R. Civ. P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."). Appellants raised the issue in a motion in limine and also reiterated at the start of the trial that it would seek to litigate the avoidability of the Composition Agreement. Both parties examined Steven regarding the purpose behind the Composition Agreement. And, Appellants continued to request the voiding of the agreement in their post-trial brief.

Weidner also maintains that Appellants' challenge to the Composition Agreement is moot because the property transferred to Sidney pursuant to the Composite Agreement is encumbered with substantial debt and will likely be foreclosed upon by a secured creditor. Weidner's predictions concerning the possible future fate of this property are not sufficient to moot this case, however.

11

Citing our discussion in Centra, the district court "decline[d] to address the validity of the Composition Agreement because, under Fourth Circuit precedent, the Court's decision must be based on the facts as they existed when Empire withdrew from the Pension Fund on September 30, 2005." Empire Beef Co., 2009 WL 1764554, at *2 n.3. This is an erroneous application of Centra, which holds only that the existence of a control group—which affects whether a company qualifies as an employer—must be determined as of the time of the withdrawal. See Centra, 947 F.2d at 121. The correctness of Centra's holding is apparent because it stands to reason that to incur liability as an employer withdrawing from a pension fund, the withdrawing company must be an employer at the time of the withdrawal. In contrast, nothing in § 1392(c) suggests that it applies only to pre-withdrawal efforts to evade or avoid liability. In fact, limiting § 1392(c) in that way would thwart MPPAA's purpose of protecting pension funds from the adverse effects of withdrawing employers. See id. at 123 (explaining that ERISA and MPPAA are remedial statutes that "should be liberally construed in favor of protecting the participants in employee benefits plans"). We therefore remand so that the district court may address the merits of Appellants' § 1392(c) claim.

12

IV.

In sum, we affirm the district court's ruling that Weidner was not jointly and severally liable for Empire's withdrawal liability and we remand for consideration of Appellants' claim that they can collect their judgment against Empire without regard to the Composition Agreement.

<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED</u>